142 P.3d 668 (2006)
STATE of Washington, Respondent,
v.
William Kendall CHAMBERS, Appellant.
No. 33268-0-II.
Court of Appeals of Washington, Division 2.
September 6, 2006.
James Lewis Reese, III, Attorney at Law, Port Orchard, WA, for Appellant.
Randall Avery Sutton, Kitsap County Prosecutor's Office, Port Orchard, WA, for Respondent.

*669 OPINION PUBLISHED IN PART
PENOYAR, J.
¶ 1 William Kendall Chambers appeals his conviction for unlawful possession of methamphetamine. Chambers argues that: (1) the trial court violated his sixth amendment[1] right to confrontation by allowing testimony about his agent's conversation with an undercover police officer; (2) the information was insufficient because it charged him only as a principal; (3) the evidence was insufficient to support his conviction because he did not possess the methamphetamine; and (4) the trial court erred when it refused to give his proposed jury instruction on attempted possession. We affirm.

FACTS

I. BACKGROUND
¶ 2 On June 9, 2004, officers from the West Sound Narcotics Enforcement Team (WESTNET) searched a house on Patricia Street in Port Orchard and found and seized methamphetamine. Detective Jon VanGesen, a member of the WESTNET team performing the search, answered a telephone call at the house. The caller said that he would soon arrive.
¶ 3 VanGesen suspected that the caller was coming to buy methamphetamine, so he repackaged some of the seized methamphetamine. Soon, a van pulled into the driveway and Jeremy Drouin came to the door. VanGesen asked Drouin whether he "had the money." Report of Proceedings (RP) (03/31/05) at 47. Drouin replied that he "had the money," then asked how much "it was." RP (03/31/05) at 47. VanGesen said a "teener"[2] cost $80, and Drouin walked back to the van. RP (03/31/05) at 47.
¶ 4 Drouin spoke with Chambers, who sat in the van's driver seat with the window down. RP (03/31/05) at 48. VanGesen then saw Chambers give Drouin money. Drouin returned to the front door, handed VanGesen the money, and VanGesen gave Drouin the methamphetamine. The police then arrested Drouin and Chambers.
¶ 5 Police Detective Dale Schuster, also a WESTNET member participating in the search, read Chambers his Miranda[3] rights. Chambers waived his rights and agreed to speak with the police. Schuster interviewed Chambers and learned that Chambers had a disability that confined him to a wheelchair.
¶ 6 Chambers told Schuster that he withdrew $200 from his bank account, then went to Drouin's house to ask Drouin to help him pump gas for his van and purchase a "teener" of methamphetamine. Drouin and Chambers went to the Patricia Street house, but had not called ahead.[4] Chambers said that he had not previously purchased methamphetamine from that house but that he had driven other purchasers there. Chambers also admitted that he gave Drouin money to purchase methamphetamine after Drouin returned from talking to VanGesen.

II. PROCEDURE
¶ 7 The State charged Chambers with unlawful possession of a controlled substance. The information charging him did not specify that he was charged as an accomplice, but it listed other suspects associated with the incident.
¶ 8 Before trial, Chambers moved to exclude Drouin's statements to VanGesen, arguing that the statements were inadmissible hearsay. The State countered that the statements were not hearsay because they were not offered for the truth of the matter asserted. The State also argued that Chambers and Drouin were coconspirators and that Drouin was acting as Chambers's agent.
¶ 9 The trial court admitted the statements under ER 801(d)(2), reasoning:
I think there is evidence by a preponderance of the evidence that Mr. Drouin *670 was acting as an agent for Mr. Chambers, that they had agreed to go to this location, that Mr. Drouin would make the contact at the door, Mr. Chambers would remain in the car, or van, and Mr. Chambers would provide the funds for the purchase of the drugs, if they were available, given that the offer of proof is that Mr. Chambers did not call this house in advance, but just went there.
Agency, as noted in Tegland, has to be proved by the acts of the principal, cannot be proved by the acts of the agent, and there's [sic] sufficient facts here by a preponderance of the evidence that Mr. Chambers was working with Mr. Drouin, and established him as his agent to assist him in making this sale of drugs by driving Mr. Drouin there and providing the money. I think that's sufficient to show that he was an agent, and under [ER] 801(d)(2), such statements are not hearsay, so there's not an issue under the Crawford[5] case which would apply. These were hearsay statements, since Mr. Drouin is unavailable, and I would rule these are testimonial statements, but they are not hearsay, so under the Crawford case, I don't think they would be rendered inadmissible, and would be admissible under 801(d)(2).
RP (03/30/05) at 15-16.
¶ 10 At trial, Chambers proposed a definitional instruction and a "to convict" instruction on attempted possession of methamphetamine. The trial court refused to give these instructions.
¶ 11 The jury convicted Chambers as charged. He now appeals.

ANALYSIS

I. HEARSAY AND THE CONFRONTATION CLAUSE
¶ 12 Chambers first argues that we should reverse his conviction because the trial court admitted Drouin's statements into evidence via VanGesen's testimony, even though Drouin did not testify. His argument has two components. First, he argues that the trial court violated the Evidence Rules barring hearsay when it admitted Drouin's statements. Second, he argues that, even if admissible under the Evidence Rules, the statements violate his right to confrontation under Crawford.

A. Standard of Review
¶ 13 Generally, we review the trial court's admission of evidence for abuse of discretion. State v. Pirtle, 127 Wash.2d 628, 648, 904 P.2d 245 (1995), cert. denied, 518 U.S. 1026, 116 S.Ct. 2568, 135 L.Ed.2d 1084 (1996). However, whether a rule of evidence applies in a given factual situation is a question of law that we review de novo. State v. Williams, 131 Wash.App. 488, 494, 128 P.3d 98 (2006). We also review de novo alleged Confrontation Clause violations. State v. Larry, 108 Wash.App. 894, 901, 34 P.3d 241 (2001).

B. Hearsay
¶ 14 Under the Evidence Rules, the trial court did not err by allowing Drouin's statements into evidence. Generally, hearsay is not admissible unless it fits within an exception to the general rule. ER 802. "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). A statement is not hearsay, however, if "[t]he statement is offered against a party and is . . . a statement by the party's agent or servant acting within the scope of the authority to make the statement for the party." ER 801(d)(2)(iv). The agency exclusion does not require that the person who made the statement be "unavailable," as defined in the rules. See ER 801(d)(2); ER 804(a).
¶ 15 Here, Drouin's statements do not fit within the definition of hearsay because the State did not offer the statements "to prove the truth of the matter asserted." ER 801(c). The State did not offer Drouin's statement that he "had the money" and the question of how much "it was" to prove that Drouin in fact had money or cared about the price. RP (03/31/05) at 47. The State instead offered the statements to prove that a dialogue occurred between Drouin and VanGesen *671 about purchasing drugs. These statements were therefore not hearsay.
¶ 16 Additionally, Drouin's statements fall outside the definition of hearsay because they were statements by an agent: (1) Drouin acted as Chamber's agent when he left the van to purchase methamphetamine, (2) Drouin made the statements "within the scope of [his] authority to make a statement" for Chambers, and (3) the State offered Drouin's statements "against a party." ER 801(d)(2)(iv). Under this analysis, it does not matter whether Drouin was "unavailable" under ER 804(a) because unavailability is not required when the statement was not hearsay or when the agency exclusion applies.
¶ 17 In short, the trial court did not violate the hearsay rules when it admitted Drouin's statements into evidence. The question remains, however, whether the admission of Drouin's statements violated Chambers' right to confront witnesses against him.

C. Confrontation Clause
¶ 18 Chambers further argues that admitting Drouin's statements violated his right to confront witnesses against him because Drouin's statements were "testimonial" under Crawford. We disagree.
¶ 19 Under the Sixth Amendment's Confrontation Clause, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure and, particularly, its use of ex parte examinations as evidence against the accused. Crawford v. Washington, 541 U.S. 36, 50, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
¶ 20 Under Crawford, admission of a testimonial statement violates a defendant's Sixth Amendment right of confrontation unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness with regard to the statement. Crawford, 541 U.S. at 59, 124 S.Ct. 1354. Crawford held that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford, 541 U.S. at 68-69, 124 S.Ct. 1354.
¶ 21 Crawford did not comprehensively define "testimonial," but it did provide some guidance to lower courts. Crawford, 541 U.S. at 68, 124 S.Ct. 1354. At a minimum, the Court announced, "testimonial" includes statements made during police interrogations and prior testimony at a preliminary hearing, before a grand jury, or at a formal trial. Crawford, 541 U.S. at 68, 124 S.Ct. 1354. In describing testimonial statements, the Court also noted that testimony is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Crawford, 541 U.S. at 51, 124 S.Ct. 1354. Further, the Court offered a non-exclusive list of definitions of the term "testimonial": (1) ex parte in-court testimony or its functional equivalent, such as affidavits, custodial examinations, and prior testimony that the defendant was unable to cross-examine; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354.
¶ 22 The Court also outlined certain types of statements that are not testimonial, like business records or statements in furtherance of a conspiracy. Crawford, 541 U.S. at 56, 124 S.Ct. 1354. Crawford cited approvingly to Bourjaily v. United States,[6] a case in which the trial court admitted statements made unwittingly to an FBI informant. Crawford, 541 U.S. at 58, 124 S.Ct. 1354.
¶ 23 Although no Washington court has addressed the present issue, the Third Circuit has held that neither Crawford nor the Confrontation Clause bars wiretap evidence or statements made to a confidential informant. *672 United States v. Hendricks, 395 F.3d 173, 181, 66 Fed.R.Evid. Serv. (Callaghan) 266 (2005). In Hendricks, the court ruled that the recorded wiretap conversations neither fell within nor were analogous to any of the specific examples of testimonial statements Crawford mentioned. Hendricks, 395 F.3d at 181. Hendricks also said that the recorded conversations did not qualify as "testimonial" under any of the three definitions the Court gave. Hendricks, 395 F.3d at 181. "Each of the examples referred to by the Court or the definitions it considered entails a formality to the statement absent from the recorded statements at issue here." Hendricks, 395 F.3d at 181.
¶ 24 Further, Division Three recently held that statements by a coconspirator made during the conspiracy may be admitted without implicating the Confrontation Clause. Williams, 131 Wash.App. at 494, 128 P.3d 98; see also Crawford, 541 U.S. at 56, 124 S.Ct. 1354 (statements made in furtherance of a conspiracy are by their nature not testimonial).
¶ 25 Here, admitting Drouin's statements to VanGesen did not violate Chambers's Confrontation Clause rights. Although the trial court referred to the statements as "testimonial," this was a harmless mischaracterization and we may affirm the trial court's decision on any theory the record and the law support. State v. Guttierrez, 92 Wash.App. 343, 347, 961 P.2d 974 (1998). We hold that Drouin's statements were not "testimonial" under Crawford.
¶ 26 Crawford's few definitions of "testimonial" all contemplate formal statements given to police to help their investigations or formal testimony in a court setting. See Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354. Crawford specifically distinguished these formal statements from casual remarks. Crawford, 541 U.S. at 51, 124 S.Ct. 1354. Drouin made his statements while he believed that he was completing a drug deal with a drug dealer. VanGesen was not in uniform, did not identify himself as a police officer, and did not even ask Drouin the types of questions that he could use to ascertain Drouin's identity. An objective witness in this circumstance would not reasonably believe that his statements would later be available for use at a trial. Drouin's casual interchange with VanGesen completely lacked the formality needed to qualify as a "testimonial" statement under Crawford.
¶ 27 We also reject Chambers's argument that there should be no constitutional distinction between statements to an undercover police officer and statements to police during an interrogation. As Crawford explained, the Confrontation Clause's purpose is to assure a right to confrontation by barring certain types of testimony: specifically, out of court statements that declarants would reasonably expect the government to use in a prosecution. Crawford, 541 U.S. at 51, 124 S.Ct. 1354. Crawford did not unilaterally exclude all statements made to law enforcement officers. See Crawford, 541 U.S. at 58, 124 S.Ct. 1354 (approving the admission of statements to an undercover informant in Bourjaily).
¶ 28 Accordingly, the trial court did not err in admitting Drouin's statements.
¶ 29 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: QUINN-BRINTNALL, C.J., and ARMSTRONG, J.
NOTES
[1] U.S. CONST. amend. VI
[2] "Teener" is a slang term for one sixteenth of an ounce of a substance, usually methamphetamine or cocaine.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] VanGesen testified that they arrested another person later that day when she came to the same house and purchased methamphetamine.
[5] Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
[6] 483 U.S. 171, 181-82, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) superseded on other grounds as stated in United States v. Kemp, 2005 U.S. Dist. LEXIS 2072 (E.D.Pa. Feb. 10, 2005).