# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                                 )
            Respondent, )
                                 )
       v. )
                                   )
ALAN JOHN NORD, )
                                   )
            Appellant. )

No. 70806-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 23, 2015

APPELWICK, J. — Nord appeals his conviction for unlawful delivery of methamphetamine, unlawful possession of methamphetamine, and attempting to elude a pursuing police vehicle. He contends that the trial court wrongfully admitted the testimony of a police officer relaying an out-of-court statement of a confidential informant, and that the admission of that hearsay violated his right to confrontation. He asserts that the charging document was insufficient, because it omitted an essential element of the crime of attempting to elude a pursuing police officer. Nord claims that the trial court made errors regarding three jury instructions and that the prosecutor engaged in misconduct. He argues that the court erred by not vacating the conviction for possession, because it violated the prohibition against double jeopardy. We affirm in part, reverse and vacate the eluding conviction, and remand for resentencing.

## FACTS

On April 10, 2013, the Bellingham Police Department conducted a controlled buy of methamphetamine (meth) from Alan Nord. Detective Bill Medlen was in charge of the operation. Detective Medlen was working with an informant, Brad Cave. Cave agreed to help the police gather evidence and successfully prosecute others in exchange for leniency for some of his own charges.

On the day of the controlled buy, while in Detective Medlen's presence, Cave made a phone call to arrange for the drug delivery. Detective Medlen put his ear up to the phone during the call so that he could hear the person on the other end of the line. Detective Medlen recognized the voice as Nord's. Cave and Nord were discussing a time that day for Cave to purchase a quarter ounce of meth from Nord. Cave told Nord he wanted to "hook up with him," and Nord told Cave that he was in Skagit County picking up "product" and would not be back in Bellingham for a few hours.

After a few more phone calls, Nord and Cave set Cave's home as the location for the buy. Cave's home was not an ideal location for the buy, because the police officers did not have the opportunity to search it beforehand to make sure that Cave did not already have meth or money in the home. But, Detective Medlen was able to search Cave's person and Cave's vehicle beforehand, and he found no money or narcotics.

After searching Cave, Detective Medlen gave him $260 in prerecorded buy money to complete the sale. Several police officers set up visual surveillance of Cave's house. As the other units set surveillance locations on Cave's street, Detective Medlen followed Cave as he drove to his home, watched Cave go into his driveway and subsequently enter his house. Detective Medlen did not enter the driveway, but watched Cave's house from the street. The entrance of the house was at the back of the building, out of view.

Detective Medlen saw a white Honda, which Nord had been known to drive, arrive at Cave's house. Cave was out of Medlen's sight for about 10 minutes prior to Nord's arrival. Detective Medlen stayed in contact with Cave during the buy via text messages and with other officers via radio. Detective Medlen saw the Honda leave less than 15 minutes after he saw it arrive at Cave's house. Less than one minute after Detective

2

Medlen saw the Honda leave and saw other officers following it, Detective Medlen went into Cave's house. Cave handed Detective Medlen a plastic bag containing a quarter ounce of meth. Detective Medlen searched Cave's person again and Cave's home. Detective Medlen did not find any buy money or other drugs on Cave's person or in his house.

As the Honda left Cave's driveway, other officers on surveillance and in communication with Detective Medlen identified Nord as the driver. One officer deployed spike strips and the Honda's front two tires blew out. Nord sped off. As he did, his back tires hit the spike strips and they began to blow out. Officers observed a passenger in the front seat of the vehicle and thought there may have also been a passenger in the back. Officers continued to pursue Nord, chasing him with visible emergency lights and audible sirens. Upon reaching a major parkway, at least four marked police cars with their lights and sirens on were pursuing Nord's vehicle. As he continued to drive, Nord drove into the oncoming lane of traffic, forcing cars to pull over to avoid a collision. As Nord drove, all of his tires were flat with rubber flying off of them. Nord failed to stop at a stop sign. Several times during the pursuit, Nord's vehicle nearly went off of the road.

After chasing Nord for miles, an officer in a marked police vehicle passed Nord. As he did so, Nord looked right at him and the officer could clearly see Nord. The officer also saw that Nord was speaking with someone on a cell phone.

After a total of 10 miles of pursuit, Deputy Jason Nyhus was finally able to force Nord off of the road. Nord tried to get the car back on the road. After the car came to rest, an officer deployed nonlethal shots into the back window of the car to shatter the window and obtain a better visual. After repeated commands to exit the vehicle, Nord

finally did, but refused to get on the ground. The officers deployed additional nonlethal rounds to get Nord to comply. The police arrested Nord. Two adult passengers, one man, and one woman were also in the car.

After Nord was detained, officers searched the Honda pursuant to a search warrant. The officers found a scale and a box of empty Ziploc bags. Officers also found Nord's wallet and social security card on the driver's side floorboard with a bag of meth and a cell phone that Cave had called earlier that day. The wallet had over $100 in it and one of the $20 bills was a bill from the prerecorded buy money. Detective Medlen did not know what happened to the other $240. The police found six other cell phones in the Honda's console.

Nord was charged with unlawful delivery of a controlled substance (methamphetamine), unlawful possession of a controlled substance (methamphetamine), attempting to elude a pursuing police vehicle, and assault in the third degree.

On April 15, 2013, from jail, Nord made a phone call to a friend. Nord told the friend that Cave was the only one he had talked to about "clear" and dealt "clear" to the day of his arrest.

The trial court found Nord guilty of all counts except assault in the third degree. At sentencing, Nord faced a standard range sentence of 60-120 months for the delivery count, 12-24 months for the possession count, and 34-41 months for the eluding count. The court imposed the high end of the standard range sentence on all counts. Nord appeals the judgment and sentence.

DISCUSSION

Nord argues that the trial court admitted hearsay evidence and violated his right of confrontation, because it allowed Detective Medlen to testify as to Cave's out-of-court testimonial statements that he overheard during the phone call with Nord. He argues that the trial court erred when it provided the jury with an accomplice liability instruction based on those statements. Nord contends that the charging document failed to include all essential elements of the offense of attempting to elude a pursuing police vehicle. He further argues that the trial court erred when it did not provide the jury with Nord's requested unwitting possession instruction. And, Nord claims that the prosecutor engaged in misconduct. Finally, Nord maintains that the trial court erred by not vacating his possession conviction, because it violated the prohibition against double jeopardy.

I.  Hearsay

Nord argues that Detective Medlen's testimony referring to Cave's out-of-court statements is inadmissible hearsay that should have been excluded from trial. Nord argues that, but for the admission of this hearsay, the State would not have been able to establish that Nord was guilty of delivery of meth.

Whether a statement is hearsay is a question of law that is reviewed de novo. State v. Edwards, 131 Wn. App. 611, 614, 128 P.3d 631 (2006). "Hearsay" is an out of court statement offered to prove the truth of the matter asserted. Id.; ER 801(c). Statements are not hearsay if they are not offered to prove the truth of the matter asserted. State v. Chambers, 134 Wn. App. 853, 859, 142 P.3d 668 (2006).

At trial, the State called Detective Medlen to testify about the controlled buy. The State began by questioning Detective Medlen about one of Cave's phone calls with Nord.

Detective Medlen testified that, when Cave called Nord, he was able to listen while the phone call took place by putting his ear next to the phone. The questioning went as follows:

Q. And could you hear what the person at the other end of the phone line [w]as saying?

A. Yes, sir. The informant was talking to the male wanting to set up a purchase of a certain amount of methamphetamine.

Q. Okay. And did you recognize the voice on the other end of the phone?

A. I did. I recognized it as Mr. Nord.

Q. Okay. And, ah, how long did that phone call continue? How much time elapsed?

A. Not too long. About a minute. Just long enough for Mr. Cave, the informant, to tell Mr. Nord he was looking for a quarter, which was a quarter ounce and the phone call -- do you want me to explain the phone call?

Q. Well, explain the content if you could, please?

A. So Mr. Cave called Mr. [sic] In order to say he was interested in buying a quarter --

MR. LARSON: Objection, hearsay.

MR. CHAMBERS: No. The truth of the matter is irrelevant. It's not offered for the truth of the matter asserted because they are setting up a dope deal and no word on operative on their own -- it's not offered for the truth.

MR. LARSON: I think it is absolutely offered for the truth, Your Honor.

THE COURT: I will allow the testimony. Go ahead.

After the court permitted the testimony, Detective Medlen continued:

So Mr. Cave was explaining to Mr. Nord [that] he wanted to buy a quarter ounce of methamphetamine, wanted to hook up with him, which is a common term for meet for the exchange. Mr. Nord explained that he was

6

currently down in Skagit County picking up the product and he would be a few hours before he got back to Bellingham.

Nord contends that Cave's statements were offered for the truth of the matter asserted, because they were offered to prove that Cave wanted to meet to purchase a quarter ounce of meth. Nord cites to a recent case, State v. Hudlow, 182 Wn. App. 266, 331 P.3d 90 (2014), where the court considered a similar hearsay challenge involving an informant. The facts in Hudlow are very similar to the facts at issue here, but with one notable difference. In Hudlow, the informant was in the backseat of the testifying detective's car and the detective was able to hear only what the informant was saying— not what Hudlow was saying on the other end of the phone line. Id. at 271, 281. At trial, the detective summarized the conversation between the informant and Hudlow and said that arrangements were made between the two to purchase meth at the Jack in the Box in Kennewick. Id. at 272. Hudlow challenged the detective's testimony as hearsay. Id. at 276. The State argued that the testimony was admissible to show the detective's state of mind. Id. The Hudlow court found that the detective's testimony was relevant only if offered to prove Hudlow planned to sell the illicit drugs and that the detective learned these facts by hearing the informant's out-of-court statements. Id. at 281. The detective's state of mind was not an issue in controversy. Id. at 280. Therefore, the court concluded that the testimony was inadmissible hearsay. Id. at 281.

Nord's case is distinguishable from Hudlow's. In Hudlow, the detective never heard Hudlow's statements nor directly quoted Hudlow. Id. The State attempted to use the informant's statements independently as a means of proving that Hudlow set up the drug deal. Id. As a result, the State was unable to provide a valid, nonhearsay purpose for the testimony besides its use to prove the truth of the matter asserted. Id.

Here, by contrast, Detective Medlen heard both sides of the conversation. Nord has not challenged the admissibility of his own statements made in the conversation with Cave. Nord's statements are put in context by the other half of the conversation—Detective Medlen's testimony about Cave's statements—whether or not what Cave said was true. In context, it is clear that the two were having a dialogue about a drug transaction.[1]

This was the case in Chambers where the defendant's agent and coconspirator purchased meth on behalf on the defendant. 134 Wn. App. at 855-56, 859. The trial court allowed into evidence the agent's statements that the agent told the seller that he "'had the money'" for the buy and that he asked how much "'it was.'" Id. at 856, 859. The Chambers court reasoned that the State did not offer the agent's statements to prove that the agent in fact had money or cared about the price. Id. at 859. Rather, the State offered the statements to prove that a dialogue occurred between the agent and the seller about purchasing drugs. Id. Consequently, it ruled that the statements were not hearsay. Id.

Similarly, a statement is not hearsay if it is used only to show the effect on the listener without regard to the truth of the statement. Edwards, 131 Wn. App. at 614. This is the case here. The State used Cave's statements to show their effect on Nord—not to prove that Cave conspired to purchase meth. It made no difference to the State's case whether Cave was telling the truth or lied about wanting to purchase meth. What matters is what words Cave spoke to Nord. Those words complete the conversation. They inform

---

[1] Nord referred to "picking up the product." This statement, taken alone, is vague and unclear. Cave's statements showed that Nord referred to "product" after hearing Cave say he was interested in purchasing meth.

what Nord meant when he responded that he was picking up the product and would be back in a few hours.

The theory of the hearsay rule is that cross-examination is the best way to reveal whatever untrustworthiness lies beneath the assertions of a witness. State v. Chapin, 118 Wn.2d 681, 685, 826 P.2d 194 (1992). Accordingly, one rationale behind the exclusion of hearsay evidence is that there is no way to cross-examine the declarant witness. State v. Stenson, 132 Wn.2d 668, 711, 940 P.2d 1239 (1997). Here, again, there is no underlying concern about whether Cave's assertions that he wanted to buy meth from Nord are trustworthy. Rather, the concern is whether Detective Medlen told the truth in recounting Cave's statements and Nord's responses. Detective Medlen testified and was subject to cross-examination. His testimony was not hearsay.

Nord argues that, even if Detective Medlen's testimony was not hearsay, Cave's statements were still _used_ later in trial to prove the truth of the matter asserted without a requisite limiting instruction. But, Nord did not request a limiting instruction. The trial court is not required to give limiting instructions sua sponte. State v. Russell, 171 Wn.2d 118, 123, 249 P.3d 604 (2011).

## II. Confrontation Clause

Nord argues that, even if the statements in question were not hearsay, their admission violated his right to confrontation under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. We review an alleged violation

9

of the confrontation clause de novo. State v. Price, 158 Wn.2d 630, 638-39, 146 P.3d 1183 (2006).

Nord did not argue below that the admission of Cave's statements violated his confrontation clause rights. Nonetheless, Nord claims that he is entitled to bring his confrontation clause challenge for the first time on appeal, because it is a manifest error affecting a constitutional right under RAP 2.5(a)(3).[2] RAP 2.5(a)(3) allows appellants to raise claims for the first time on appeal if such claims constitute manifest error affecting a constitutional right. See also, State v. Kronich, 160 Wn.2d 893, 899-01, 161 P.3d 982 (2007), overruled on other grounds by State v. Jasper, 174 Wn.2d 96, 116, 271 P.3d 876 (2012).

The State contends that Nord waived his confrontation clause challenge, because he raised it for the first time on appeal. It cites to State v. O'Cain, 169 Wn. App. 228, 247-48, 279 P.3d 926 (2012) for the assertion that Nord cannot raise his confrontation clause challenge for the first on appeal notwithstanding RAP 2.5(a)(3).

In O'Cain, this court declined to consider a defendant's confrontation clause claim for the first time on appeal. 169 Wn. App. at 248. We noted that, under the United States Supreme Court's decision in Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), a defendant loses the right to confrontation by not objecting to the offending evidence but that states may govern the means by which defendants may assert the right to confrontation by adopting rules applicable to trial court proceedings. O'Cain, 169 Wn. App. at 236-37. The O'Cain court reasoned that if it were

---

[2] Nord does not argue, and therefore we do not analyze, whether a hearsay objection at the trial court, if overruled, is adequate to a preserve a confrontation clause challenge on appeal.

not the defendant's burden to object at the trial court, the trial judge would be placed in the position of sua sponte interposing confrontation objections on the defendant's behalf or risk knowingly presiding over a trial headed for apparent reversal on appeal. Id. at 243. The court opined that objecting on confrontation clause grounds is trial counsel's tactical decision in which trial judges should not interfere. Id.

As a result, the O'Cain court held that Washington's ER 103—which precludes claims of error "'predicated'" on rulings admitting or excluding evidence without a timely and specific objection—is in accord with Melendez-Diaz and trumps RAP 2.5(a)(3). Id. at 242-43, 247-48 (quoting ER 103(a)(1)). As such, O'Cain was precluded from raising his confrontation clause challenge for the first time on appeal. Id. at 248.

Nord contends that this court's decision in State v. Fraser, 170 Wn. App. 13, 26-27, 282 P.3d 152 (2012), dictates that this court should engage in a RAP 2.5(a)(3) analysis notwithstanding the decision in O'Cain.

In Fraser, we adhered to our decision in O'Cain, but acknowledged that RAP 2.5(a)(3) may be an example of a state procedural rule that governs the exercise of confrontation clause objections permitted by Melendez-Diaz. Fraser, 170 Wn. App. at 26-27. The Fraser court then opted to engage in a RAP 2.5(a)(3) analysis. Id. at 27.

Because the Fraser court acknowledged that RAP 2.5(a)(3) is possibly a procedural rule by which Washington State allows defendants to raise confrontation clause objections for the first time on appeal, it engaged in the alternative RAP 2.5(a)(3) analysis. For the reasons stated in O'Cain, we do not believe that RAP 2.5(a)(3) is an example of a state procedural rule that permits a confrontation clause challenge to be raised for the first time on appeal in this case. To the extent there was error below, the

11

error was not caused by the trial court, but rested with Nord's trial counsel's failure to object based on confrontation clause grounds. The proper challenge on appeal would be one based on ineffective assistance of counsel. See Hudlow, 182 Wn. App. at 277. Nord does not make an ineffective assistance of counsel argument on appeal.[3] By not objecting below, Nord waived his confrontation clause challenge on appeal. Unlike the Fraser court, we decline to engage in an alternative RAP 2.5(a)(3) analysis.[4]

III. Sufficiency of the Charging Document on Eluding

Nord argues for the first time on appeal that the charging document omitted an essential element of the offense of attempting to elude a pursuing police vehicle. Specifically, Nord contends that the charging document omitted the essential element that the defendant acted "willfully." He contends that the missing element cannot be implied from the charging document. He argues that this error requires reversal of the conviction, vacation of the restitution order, and resentencing.

This court reviews challenges to the sufficiency of a charging document de novo. State v. Williams, 162 Wn.2d 177, 182, 170 P.3d 30 (2007). When hearing a challenge to the sufficiency of the charging document for the first time on appeal, the court liberally construes the document. State v. Kjorsvik, 117 Wn.2d 93, 103, 812 P.2d 86 (1991). This is intended to discourage defendants who may recognize the deficiency in the charging

---

[3] Nord cites to the Hudlow court's recognition of the possibility for an ineffective assistance of counsel claim when trial counsel does not raise a confrontation clause challenge. But, Nord does not specifically contend that he was subject to ineffective assistance of counsel.

[4] Because Detective Medlen's testimony was not hearsay and because Nord waived his confrontation clause challenge, we need not address Nord's argument that the trial court erred in instructing the jury on accomplice liability based on Officer Medlen's erroneously admitted testimonial statements.

document below, but save their challenge for appeal after receiving an unfavorable judgment. Id.

To be constitutionally adequate, a charging document must include all essential elements of the crime. Id. at 101-02. An essential element is one whose specification is necessary to establish the very illegality of the behavior. State v. Johnson, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992). Under the rule of liberal construction, even if there is an apparently missing element, it may be able to be fairly implied from language within the charging document. Kjorsvik, 117 Wn.2d. at 104. If the court does not find the missing element, prejudice is presumed and we reverse without reaching the question of prejudice. State v. McCarty, 140 Wn.2d 420, 425-26, 998 P.2d 296 (2000). If the element is fairly implied, we ask whether the defendant was actually prejudiced by the "inartful language." Kjorsvik, 117 Wn.2d. at 104-05; McCarty, 140 Wn.2d at 425. The primary purpose of this rule is to give defendants sufficient notice of the charges so they can prepare an adequate defense. Kjorsvik, 117 Wn.2d. at 101.

The statute on attempting to elude a police vehicle provides, in part:

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

RCW 46.61.024(1) (Emphasis added.) The amended information charging Nord read:

> That on or about the 10th day of April, 2013, the said defendant, ALAN JOHN NORD, then and there being in said county and state, did fail to immediately bring his vehicle to a stop after a uniformed office [sic] driving an appropriately marked police vehicle, equipped with emergency lights and siren, gave a visual or audible signal to bring his vehicle to a stop and did

drive his vehicle in a reckless manner while attempting to elude a pursuing police vehicle, in violation of RCW 46.61.024, which violation is a Class C Felony and during the commission of this offense did endanger one or more persons for the purposes of RCW 9.94A.533(11).

Nord argues that the omission of the word "willfully" from the charging document did not inform him that in order to be convicted of attempting to elude he needed to (1) willfully <u>fail to stop</u> and (2) that he needed to know that he was being pursued by a <u>police</u> vehicle. The State concedes that "willfully" is an essential element and that it does not appear on the face of the charging document. But, it argues that "willfully" failing to stop can be fairly implied from the charging document's reference to Nord committing the offense while <u>attempting to elude</u> the police vehicle.

One Washington case defined "attempt" in the context of RCW 46.61.024. <u>See</u> <u>State v. Gallegos</u>, 73 Wn. App. 644, 650, 871 P.2d 621 (1994). While the <u>Gallegos</u> court analyzed a former version of the statute and considered an evidentiary challenge instead of a sufficiency of the charging document challenge, the decision is still instructive. <u>Id.</u> at 649-50. The court in <u>Gallegos</u> reasoned that the word "attempt" in the statute has nothing to do with criminal attempt and must be given its ordinary meaning of "'to try.'" <u>Id.</u> at 650. Accepting that "attempting to" takes on its ordinary meaning and implies a volitional element, we still must determine whether "attempting to" extends to the "fails to stop" element of the statute and implies the necessary mental state for that element.

This court considered the relationship between the word "attempt" and the elements of the attempting to elude statute in <u>State v. Stayton</u>, 39 Wn. App. 46, 691 P.2d 596 (1984). The <u>Stayton</u> court, considered an earlier version of the attempting to elude statute in the context of a challenged "to convict" jury instruction. <u>Id.</u> at 47. The court broke the requirements of the statute into three elements that it claimed needed to occur

14

chronologically: (1) a uniformed police officer whose vehicle is appropriately marked must give a signal, (2) the driver must be a person who willfully fails or refuses to stop immediately, and (3) while attempting to elude a pursuing police vehicle the driver drives recklessly. Id. at 49. Ultimately, the Stayton court held that the phrase "'while attempting to elude a pursuing police vehicle'" modifies only the element that specifies the criminal manner of driving which ensues after a driver's willful failure to stop—driving recklessly. Id. at 50. In other words, attempting to elude does not provide a mental state for all of the elements of the attempting to elude statute. Instead, recklessly provides the mental state for how a driver must be driving while attempting to elude a police vehicle.

"Willfulness" in the attempting to elude statute context is identical with knowledge. State v. Flora, 160 Wn. App. 549, 553, 249 P.3d 188 (2011). There can be no attempt to elude unless there is the prerequisite knowledge that there is "'a pursuing police vehicle.'" Stayton, 39 Wn. App. at 49 (quoting former RCW 46.61.024 (1983)). There can be no willful failure to stop unless there is the prerequisite knowledge that a statutorily appropriate signal has been given by a statutorily appropriate police officer. Id. at 49-50.

Here, "attempting to" or "trying to" elude a pursuing police vehicle, does not inform Nord that the State must prove that he knew he was given a statutorily appropriate signal to stop and knew it was given by a statutorily appropriate police officer and knew that it was a police vehicle that was pursuing him. On its face, the charging document would allow conviction if the state proved an officer gave an appropriate signal, Nord failed to stop, Nord was pursued by a police vehicle, and Nord was driving recklessly while trying to elude the vehicle. Even under a liberal reading, the language does not fairly imply that Nord could defend on the basis that he did not know a signal was given, did not know the

15

person giving a signal was a police officer, or did not know that the vehicle pursuing him was a police vehicle.

Because the missing element cannot be fairly implied, prejudice is presumed. McCarty, 140 Wn.2d at 425-26. We reverse the trial court and vacate Nord's attempting to elude a pursuing police officer conviction.

Nord also requests resentencing and vacation of the restitution order, because we reverse his attempting to elude conviction. The State concedes that if we reverse Nord's eluding conviction, Nord is entitled to resentencing. We vacate the restitution order and remand for resentencing.[5]

## IV.   Unwitting Possession Jury Instruction

Nord argues that the trial court erred when it did not provide the jury with an unwitting possession instruction. He contends that this error requires reversal of the possession conviction.

A trial court must instruct on a party's theory of the case if the law and evidence support it. State v. Otis, 151 Wn. App. 572, 578, 213 P.3d 613 (2009). Unwitting possession is a judicially created affirmative defense that may excuse violation of the offense of possession of a controlled substance. State v. Buford, 93 Wn. App. 149, 151-52, 967 P.2d 548 (1998). A criminal defendant is not entitled to an unwitting possession instruction unless the evidence presented at trial is sufficient to permit a reasonable juror

---

[5] See State v. Osborne, 140 Wn. App. 38, 42, 163 P.3d 799 (2007) (holding that a court may not require restitution beyond the crime charged if the defendant did not expressly agree to pay restitution or if the state failed to establish a causal connection between the crime and damages); State v. Houf, 120 Wn.2d 327, 333, 841 P.2d 42 (1992) (finding that sentencing decisions should only consider the actual crime of which the defendant has been convicted, his or her criminal history, and the circumstances surrounding the crime).

to find, by a preponderance of the evidence, that the defendant unwittingly possessed the contraband. Id. at 152. The defendant is entitled to the benefit of all the evidence—no matter which party presented it. State v. Callahan, 87 Wn. App. 925, 933, 943 P.2d 676 (1997); State v. Olinger, 130 Wn. App. 22, 26, 121 P.3d 724 (2005). The evidence is viewed in the light most favorable to the defendant. Otis, 151 Wn. App. at 578. A trial court's refusal to give instruction to a jury, if based on a factual dispute, is reviewable for abuse of discretion. State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998), adhered to on remand, noted at 173 Wn. App. 1027 (2013).

Nord argues that he was entitled to the unwitting possession jury instruction, because the meth was found on the floor of the Honda and there were two other adult passengers in the car who could have owned the meth. He contends that while the meth was found on the driver's side of the car, it is common for items to slide around on the floor of cars. He contends that this evidence admitted by the State is sufficient to permit a reasonable juror to find, by a preponderance of the evidence, that Nord unwittingly possessed meth.

While Nord is correct that he is entitled to the benefit of all of the evidence and that it is to be viewed in the light most favorable to him, no evidence suggested that the drugs slid around in the car, had been in the possession of another, or belonged to someone else. Some basic facts must be put into evidence that would prevent a jury from merely engaging in speculation or conjecture. Buford, 93 Wn. App. at 153.

Instead, the evidence showed that the bag of meth, Nord's wallet, and Nord's cell phone were found on the driver's side floorboard of the car that he had been driving

17

immediately before his arrest. We find that the trial court did not abuse its discretion when it denied Nord's request for an unwitting possession jury instruction.

## V.    Prosecutorial Misconduct

Nord argues that he was deprived of his right to a fair trial, because the prosecution engaged in flagrant and ill-intentioned misconduct. Nord makes these assertions based on remarks the prosecutor made during closing argument. He claims his failure to object at trial is immaterial because the remarks were so prejudicial that they would not have been cured by an instruction.

An appellant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. State v. Walker, 164 Wn. App. 724, 729, 265 P.3d 191 (2011). Prejudice exists only where there is a substantial likelihood the misconduct affected the jury's verdict. Id. A prosecutor's comments during closing argument are reviewed in context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. Id. The absence of a motion for mistrial at the time of the argument strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial. State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990). Defense counsel's failure to object to alleged prosecutorial misconduct at trial fails to preserve the issue for appeal, unless the misconduct is so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice incurable by a curative instruction. Id.

First, Nord challenges the remarks the prosecutor made regarding the actions of Deputy Nyhus—the police officer who eventually forced Nord's car off the road. The prosecutor described the officer's actions as "selfless" and "heroic." Nord argues the

prosecutor insinuated the jury should find Nord culpable so that the officer's actions would be reinforced and appreciated.

Nord relies on State v. Casteneda-Perez, 61 Wn. App. 354, 810 P.2d 74 (1991), for the assertion that a prosecutor's remarks are improper if they insinuate that an acquittal would denigrate the police. In Casteneda-Perez, the court held that it was improper for a prosecutor to create a false choice for the jury of finding the defendant guilty or finding that the police officer witnesses were deliberately giving false testimony. Id. 360, 362-63.

The case at hand is distinguishable. The assault charge was based on Nord's actions against Deputy Nyhus. In order to find Nord guilty of third degree assault, the jury had to find that Deputy Nyhus had apprehension and fear of bodily injury based on Nord's driving. The relevant jury instruction read, "An assault is an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury." (Emphasis added.) The prosecutor stated in closing argument: "You know, the question is meanwhile if [Officer Nyhus was] afraid and [Officer Nyhus] didn't want to have a collision, [Officer Nyhus is] afraid of pursuing [Nord], why didn't [Officer Nyhus] just stop?" The prosecutor was attempting to make its case on Nord's assault charge. He asked the jury to consider that Officer Nyhus was afraid but acted selflessly and heroically by pursuing Nord anyway. He was not attempting to express to the jury that an acquittal would cast the veracity of Deputy Nyhus into question. This was not a statement intended to inflame the jury or insinuate that an acquittal would denigrate the police. The

19

statements were not flagrant and ill-intentioned. Notably, the jury did not convict Nord of the assault charge.

Secondly, Nord challenges the prosecutor's reference to him in closing arguments as a "madman." Nord argues that the remark was nothing but an appeal to the jury's passion and together with the comments about Deputy Nyhus sent the prejudicial message that Nord was a mad villain who had to be stopped by the heroic police. Nord relies on State v. Belgarde, 110 Wn.2d 504, 506, 755 P.2d 174 (1988) for the assertion that referring to Nord as a "madman" was improper. Belgarde was a murder case in which the prosecutor told the jury that the defendant was "'strong in'" a group which the prosecutor described as "'a deadly group of madmen,'" and "'butchers that kill indiscriminately.'" Id. at 508.

Like in Belgarde, Nord did not object to the prosecutor's remarks in closing argument, request a curative instruction, or move for a mistrial. Id. at 507. As such, on appeal, Nord would have to make a showing that the prosecutor's misconduct was so egregious that any resulting prejudice could not have been obviated by a curative instruction. State v. Riley, 69 Wn. App. 349, 354, 848 P.2d 1288 (1993). The jury was instructed and reminded on multiple occasions not to make determinations based on emotions. Nord's argument is that it is a naïve assumption that prejudicial effects can be overcome by instructions to the jury and that all practicing lawyers know this to be fiction. This argument does not satisfy the burden placed on Nord.

Here, the prosecutor did not say Nord was a madman. He said that Nord was "driv[ing] like a madman." "Driving like a madman" is a commonly used hyperbole to describe someone driving unsafely, and his unsafe driving was at issue in the alluding

20

and assault charges. This is distinguishable from Belgarde where the prosecutor claimed the defendant belonged to a specific murderous group of madmen. Secondly, the reference to Nord in closing argument as a "madman" was made well before the statement about Officer Nyhus acting heroically and was made in a different context. The prosecutor did not directly juxtapose the characterizations. To claim that it was the prosecutor's deliberate ill-intention to send the message to the jury Deputy Nyhus was a hero and Nord was a madman by contrast is a mischaracterization of the closing argument.

We conclude that the prosecutor's remarks were not flagrant and ill-intentioned and that there was no resulting prejudice.

## VI.  Double Jeopardy

Nord argues that his convictions for delivery of a controlled substance and possession of a controlled substance violate the prohibition against double jeopardy. He claims these convictions may rest on the same evidence and the jury was not instructed that the two crimes have to be based on separate and distinct acts. He contends that the remedy for this error is vacation of the possession conviction.

The constitutional guaranty against double jeopardy protects a defendant against multiple punishments for the same offense. State v. Mutch, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). To determine whether a defendant received multiple punishments for the same offense, we may review the entire record to establish what was before the trial court. Id. at 664. Based on this review, if it was not manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same offense, and that each count was based on a separate act, there is a double jeopardy violation. Id. The

21

risk of double jeopardy is eliminated where separate crimes are charged, evidence is presented on each charge, and the argument of counsel clearly identifies the acts corresponding to each charge. State v. Fisher, 74 Wn. App. 804, 818, 874 P.2d 1381 (1994) vacated in part on other grounds by State v. McFarland, 127 Wn.2d 322, 899 P.2d 1251 (1995). There is no requirement that a specific jury instruction be provided detailing the act or acts which form the basis for each count when there is no evidence of jury confusion as to the factual basis for each count. Id. at 817-18. Double jeopardy is a question of law which is reviewed de novo. State v. Knight, 176 Wn. App. 936, 952, 309 P.3d 776 (2013), review denied, 179 Wn.2d 1021, 318 P.2d 279 (2014).

Nord points to a question from the jury[6] for the proposition that the jury struggled in determining whether Nord possessed the meth the police found in the car. Nord speculates that the jury may have rested its verdict for delivery and possession on the same delivery facts because of this confusion about the elements of constructive possession. This misstates the standard. It does not matter if the jury ultimately rested its verdict on the same set of facts. What matters is that it is clear to the jury that each count was based on a separate act and that the State was not seeking to impose multiple punishments for the same offense. Mutch, 171 Wn.2d at 664. Just because the jury may have had doubt about whether the State met its burden of proof on the possession charge does not mean that the State did not make the separate delivery and possession acts clear to the jury. It also does not mean that the jury was confused as to the factual basis for the possession charge.

_____

[6] The jury asked for further instruction on the meaning of "dominion and control" in the possession instruction.

The jury was informed that a separate crime was charged in each count and that their decision regarding one count should not control their verdict on another. For the delivery charge, the jury was instructed that it had to find that Nord or an accomplice delivered the meth whereas the possession charge omitted any reference to an accomplice. The jury received additional instructions about possession and constructive possession that would not apply to the delivery charge. At trial, two separate exhibits of meth were admitted into evidence. Exhibit 16 was the quarter ounce of meth that was delivered to Cave, and Exhibit 17 was the meth found on the floorboard of the Honda at the end of the pursuit. During closing arguments the prosecutor addressed the meth delivered to Cave and the meth in the Honda separately and explained constructive possession in conjunction with only the possession instruction.

Considering the record as a whole as the case law instructs, we find that it was manifestly apparent to the jury from the instructions, evidence admitted at trial, and closing arguments that the delivery count was based on Nord being either a principal or accomplice to the delivery that occurred at Cave's house and that the possession charge was based on the drugs found in the Honda at the end of the police pursuit.[7] Therefore, there was no double jeopardy violation.

---

[7] Nord contends that possession of meth and delivery of meth are the same in law. He does so ostensibly to argue that, if the possession and delivery charge are the same in fact, then there is a double jeopardy violation. See State v. Kier, 164 Wn.2d 798, 804, 194 P.3d 212 (2008) (When determining whether there is a double jeopardy violation if the legislative intent is unclear we may turn to the same evidence test, which asks if the crimes are the same in law and in fact.). But, because we find that the possession and delivery counts were not the same in fact in this case, we need not decide whether delivery of meth and possession of meth are the same in law.

We affirm in part, reverse and vacate the eluding conviction, and remand for resentencing.

WE CONCUR:

_Appelwick, J._

_Spearman, C.J._      _Leach, J._