128 P.3d 98 (2006)
STATE of Washington, Respondent,
v.
Dione Jamaal WILLIAMS, Appellant.
No. 23124-1-III.
Court of Appeals of Washington, Division 3, Panel One.
January 31, 2006.
*99 David N. Gasch, Attorney at Law, Spokane, WA, for Appellant.
Kevin M. Korsmo, Andrew J. Metts, Attorneys at Law, Spokane, WA, for Respondent.
SWEENEY, J.
¶ 1 Conspiracy is an inchoate crime. And so our focus is on "the conspiratorial agreement, not the specific criminal object or objects." State v. Bobic, 140 Wash.2d 250, 265, 996 P.2d 610 (2000). Here, a group of friends including Dione J. Williams planned to "do a lick." Witnesses at his trial variously described this as whatever was necessary to relieve a victim of his valuables. A female member of the group lured Arren Cole to a downtown Spokane alley late at night. Mr. Williams tried to rob Mr. Cole at gunpoint. He then shot him in the back as Mr. Cole tried to flee. A jury found Mr. Williams guilty of three counts of conspiracy, and one count each of attempted robbery and felony murder. The evidence supports one conspiracy conviction. We affirm on count III for conspiracy to commit first degree robbery. We reverse the conspiracy convictions on counts I and II for second degree robbery and first degree burglary. We also conclude that the attempted robbery count merged into the felony murder because it was the predicate offense. We then reverse the attempted *100 robbery conviction. The State concedes that the firearm enhancement cannot stand. We remand for resentencing.

FACTS
¶ 2 Dione J. Williams was one of a group of people who socialized together. A woman in the group, Alyssa Knight, met Arren Cole, a reputed gang member visiting Spokane from Los Angeles.
¶ 3 Between Tuesday and Thursday, September 23-25, 2003, the group gathered at their usual hangouts, including the home of Kaitlin Walker and a tavern called The Grail in Post Falls, Idaho. Ms. Knight told Mr. Williams, Darian Ervin, and others that Mr. Cole was carrying money, jewelry, and drugs. They decided to "do a lick"[1] on Mr. Cole. Precisely what they meant by this was disputed. It appears from this record, however, that to "do a lick" means to take someone's valuables by any available means. Their discussions of various methods of doing this extended over several days.
¶ 4 They first planned to rob Mr. Cole on Tuesday night. This fell through when Ms. Knight reported that Mr. Cole might be carrying a gun. Mr. Ervin said he would get a gun so that Mr. Williams could take Mr. Cole the following night. On Wednesday, Ms. Knight, Mr. Williams, and Mr. Ervin discussed the impending "lick" and considered various strategies and tactics while driving from Post Falls to Spokane. But the crime had to be postponed again.
¶ 5 On Thursday, Ms. Knight met Mr. Cole by arrangement at a downtown Spokane bar. Mr. Williams was also in the bar. Ms. Knight told Mr. Williams that Mr. Cole was carrying a lot of money and jewelry. Ms. Knight then went with Mr. Cole to his hotel room. Some time later, Mr. Cole accompanied Ms. Knight down to the alley behind his hotel to wait for her ride.
¶ 6 As planned, Mr. Williams arrived in a car driven by Mike Knypstra. Ms. Knight got in the car and Mr. Williams got out. As Mr. Williams approached Mr. Cole, Mr. Williams put his hand in his pocket and said something to him. Mr. Cole backed away. Mr. Williams then pulled the gun from his pocket. Mr. Cole turned and started running down the alley. Mr. Williams shot him in the back. Mr. Knypstra drove Mr. Williams to the Maple Street Bridge where they threw the gun into the Spokane River. The police later recovered the gun. Mr. Williams was arrested and charged with conspiracy to commit second degree robbery (count I); conspiracy to commit first degree burglary (count II); conspiracy to commit first degree robbery (count III); attempted first degree robbery (count IV); and first degree (felony) murder (count V). A jury found Mr. Williams guilty on all counts. The jury also found that Mr. Williams was armed with a deadly weapon on counts III through V.
¶ 7 At sentencing, Mr. Williams argued that all three conspiracy counts were based on the same criminal conduct and supported only one punishment. He also argued that the attempted robbery count was the predicate offense for the felony murder, so the two offenses merged. The court denied the motions and sentenced Mr. Williams on all counts with five-year firearm enhancements on counts III through V.

DISCUSSION

CRAWFORD VIOLATION
¶ 8 Mr. Williams first challenges the admission of statements by his coconspirator, citing Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
¶ 9 Mr. Ervin was a coconspirator and he faced a separate prosecution. He did not appear at Mr. Williams' trial because he was an untried, severed codefendant and therefore, of course, had the right to remain silent. Mr. Ervin made out-of-court statements that fall into two categories. He made statements to various people during the conspiracy. They testified at Mr. Williams' trial. Mr. Ervin also gave what was described by defense counsel as a "free-talk" confession after his arrest in which he implicated Mr. Williams. Report of Proceedings (Vol.I) at *101 31. He said that Mr. Williams admitted to him that he shot Mr. Cole.
¶ 10 Mr. Williams contends that all of Mr. Ervin's statementsincluding those made during the conspiracyshould have been excluded under Crawford. That case holds that testimonial statements, that is statements the declarant would reasonably expect to be used in a future trial, are inadmissible unless the declarant is available for cross-examination. The State responds that Crawford does not apply to the conspiracy statements because they were not testimonial and were admissible under the coconspirator hearsay exception of ER 801(d)(2)(v).
¶ 11 The trial court based its decision solely on application of a court rule to specific undisputed facts. So the question whether the court rule (ER 801) applies is a question of law we review de novo. State v. Tatum, 74 Wash.App. 81, 86, 871 P.2d 1123 (1994). The trial court correctly admitted statements made during and in furtherance of the conspiracy under ER 801(d)(2)(v). It provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. ER 801(d)(2)(v). Mr. Ervin's custodial statements were neither offered nor admitted. The confrontation clause was not then implicated in the admission of Mr. Ervin's statements. Crawford, 541 U.S. at 51, 124 S.Ct. 1354.

CONSPIRACY CONVICTIONS
¶ 12 Mr. Williams challenges his conviction for and sentencing on two of the three counts of criminal conspiracy.
A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement.
RCW 9A.28.040(1). The two challenged conspiracies are count I (conspiracy to commit second degree robbery) and count II (conspiracy to commit first degree burglary). Mr. Williams does not challenge his conviction of count III (conspiracy to commit first degree robbery).
¶ 13 Mr. Williams challenges the sufficiency of the evidence to prove any conspiracy other than the conspiracy to commit first degree robbery. But if multiple conspiracy convictions stand, Mr. Williams contends they are the same criminal conduct for sentencing purposes. The State responds that the evidence, including circumstantial evidence, when viewed most favorably to the prosecution, is sufficient to support multiple conspiracy convictions and to support a separate sentence for each.
¶ 14 A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences to be drawn from that evidence. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). Evidence is sufficient to support a conviction if a reasonable jury could have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980).
¶ 15 To convict Mr. Williams on count III, conspiracy to commit first degree robbery, the jury had to find that he planned to arm himself with a deadly weapon, or to display what appeared to be a deadly weapon, or to inflict bodily injury upon Mr. Cole, either while robbing him or in immediate flight from doing so. RCW 9A.56.200. To sustain an additional conspiracy conviction on count I (conspiracy to commit second degree robbery), the evidence must show that Mr. Williams and his associates also planned to take personal property from Mr. Cole's person or in his presence, against his will, by the use or threatened use of immediate force or violence. RCW 9A.56.190, .210. For the conviction on count II (conspiracy to commit first degree burglary) to stand, the evidence must additionally establish a plan to enter or remain unlawfully in Mr. Cole's hotel room with intent to commit a crime there, either while armed with a deadly weapon or by assaulting him. RCW 9A.52.020.
¶ 16 Mr. Williams contends that the evidence did not show that all the elements of the second degree robbery and burglary (counts I and II) were agreed to at precisely the same point in the planning. For instance, at the moment the group agreed to *102 relieve Mr. Cole of his money and valuables, they were not necessarily contemplating the use of force; the means might have been seduction, intoxication, or other nonviolent methods. Conversely, when they did talk about using force, the agreement to take Mr. Cole's property had already been made. We reject this argument.
¶ 17 Mr. Williams offers no authority for the view that a conspiracy requires that all the criminal elements of the plan must be proposed at the same instant in time. Nor does he explain why a planned criminal enterprise that evolves over time should be treated differently than one that is fully formed at the outset.
¶ 18 The State's evidence was sufficient to sustain a conviction for conspiracy to commit robbery. Several witnesses testified that to "do a lick" means to rob someone. Some testified that "a lick" could also be theft including theft by deception. But the jury could find that this particular plan was to take Mr. Cole's property from his person or in his presence, with Mr. Williams possibly rushing and disarming Mr. Cole if necessary. The evidence included a plan to commit all the statutory elements of robbery. This was sufficient to prove conspiracy as charged either in count I or count III. But not both, because as we will explain Bobic says one plan, one count. Bobic, 140 Wash.2d at 261, 996 P.2d 610.
¶ 19 A conspiracy is a plan to carry out a criminal scheme together with a substantial step toward carrying out the plan. Id. at 262, 996 P.2d 610. The punishable criminal conduct is the plan: one plan, one conspiracy. Id. It does not matter how many statutory violations the conspirators considered in the course of devising the plan. Id. at 264-65, 996 P.2d 610. By whatever means this "lick" was to be accomplished, the nature and extent of the conspiracy lies in "`the agreement which embraces and defines its objects.'" Id. (quoting Braverman v. United States, 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942)).
¶ 20 Here, Mr. Williams and company hatched a plan to do "a lick" on Mr. Cole, and they took substantial steps toward bringing that about. For us, this is one crime which should result in one punishment. Nothing in this record suggests that more than one criminal transaction was planned. It was simply left up in the air where, how, and with what degree of force the property transfer would take place. But the agreement and the substantial steps contemplated a single criminal enterprise and therefore establish a single criminal conspiracy.
¶ 21 Conspiracy is an inchoate crime, not a completed crime. Bobic, 140 Wash.2d at 265, 996 P.2d 610. Therefore, any number of acts in the days preceding the climax here could be labeled the substantial step that completed the crime of conspiracy. Id. (citing State v. Dent, 123 Wash.2d 467, 476, 869 P.2d 392 (1994) (citing Ira P. Robbins, Double Inchoate Crimes, 26 HARV. J. ON LEGIS. 1, 27-29 (1989) and 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 6.5, at 95 (2d ed.1986))). For this reason, the defendant is not required to prove that a particular substantial step established one possible criminal element of the scheme and not another in order to avoid multiple punishments for the same criminal conduct. Bobic, 140 Wash.2d at 265, 996 P.2d 610.
¶ 22 The record supports only one conspiracy convictionthat for count III, conspiracy to commit first degree robbery.

MERGER
¶ 23 Mr. Williams argues that, to convict him of first degree murder, the State had to prove that he committed or attempted to commit first degree robbery. And here it did that by proving that he killed the victim in furtherance of, or in immediate flight from the separately defined crime of robbery or attempt. The shooting was then part of the robbery attempt and inextricably related. So attempted robbery merges with first degree murder.
¶ 24 The State responds that the predicate offense does not merge into felony murder if it is factually disconnected or serves a different purpose or intent. And it says that is the case here.
¶ 25 The State cites State v. Peyton as an example of a factual disconnect between a *103 robbery and a felony murder based on the robbery. State v. Peyton, 29 Wash.App. 701, 630 P.2d 1362 (1981). There, after a completed bank robbery, the robbers fled in one vehicle, abandoned it, fled again in another vehicle, then shot a law enforcement officer in a gunfight. The robbery did not merge with the homicide because it was disconnected in time, place, and circumstances. Id. at 720, 630 P.2d 1362. Moreover, the State continues, the crimes do not merge if they are committed with a different intent. Robbery and murder have different intents. The intent of robbery is to take something. The intent of murder is to kill. Therefore, merger does not apply to felony murder based on the predicate crime of robbery. Finally, the State contends that there is "no connection between the two crimes other than the obvious commonality of defendant and victim." Resp't's Br. at 27.
¶ 26 Whether the merger doctrine bars double punishment is a question of law that we review de novo. State v. Zumwalt, 119 Wash.App. 126, 129, 82 P.3d 672 (2003), aff'd sub nom. State v. Freeman, 153 Wash.2d 765, 108 P.3d 753 (2005). The two offenses merge if to prove a particular degree of crime, the State must prove that the crime "was accompanied by an act which is defined as a crime elsewhere in the criminal statutes." State v. Vladovic, 99 Wash.2d 413, 419 & n. 2, 662 P.2d 853 (1983).
¶ 27 We then look to the statutory elements of each crime to determine whether the legislature intended to impose a single punishment for a homicide committed in furtherance of or in immediate flight from an armed robbery. Id. The offenses merge if the essential elements of the homicide include all the elements of the robbery, such that the facts establishing one necessarily also establish the other. Id. at 420-21, 662 P.2d 853; Zumwalt, 119 Wash.App. at 131, 82 P.3d 672; State v. Johnston, 100 Wash. App. 126, 138, 996 P.2d 629 (2000).
¶ 28 Here, Mr. Williams was convicted of felony first degree murder as defined by RCW 9A.32.030(1)(c). The elements expressly require an associated conviction for another crime:
(1) A person is guilty of murder in the first degree when:
....
(c) He or she commits or attempts to commit the crime of ... (1) robbery in the first or second degree ... and in the course of or in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants.
RCW 9A.32.030. In order to find Mr. Williams guilty of first degree murder, then, the jury had to find him guilty of attempted first degree robbery and of killing Mr. Cole in the course of or in furtherance of or in immediate flight from that attempt. RCW 9A.32.030(1)(c)(1). A separate conviction for the predicate crime is, therefore, contrary to the legislative intent and the offenses merge. State v. Johnson, 92 Wash.2d 671, 676, 600 P.2d 1249 (1979).
¶ 29 The attempted robbery would not merge only if it was "merely incidental" to the homicide. Vladovic, 99 Wash.2d at 421, 662 P.2d 853. That is not the case here. The robbery was integral to the killing. The shooting had no purpose or intent outside of accomplishing the robbery or facilitating Mr. Williams' departure from the scene.
¶ 30 The felony murder statute specifically includes attempted first degree robbery as a predicate crime. RCW 9A.32.030(1)(c)(1). If, as the State suggests, the jury found the attempted robbery was complete when Mr. Williams took some undefined substantial step earlier in the evening, then it could not have found that the shooting was in furtherance of or in flight from that attempt. And the first degree murder conviction could not stand. Likewise, the State's assertion that the two crimes were completely unrelated is inconsistent with the felony murder charge.
¶ 31 The State cites In re Personal Restraint of Fletcher for the proposition that criminal acts with a different purpose and effect do not merge. In re Pers. Restraint of Fletcher, 113 Wash.2d 42, 776 P.2d 114 (1989). Fletcher is distinguishable. It is not a felony murder case. And the lesser offense in that case was not an essential element of the greater offense. Id. at 52, 776 P.2d 114.
*104 ¶ 32 Count IV, attempted first degree robbery, merged with count V, first degree murder.

FIREARM ENHANCEMENTBLAKELY VIOLATION
¶ 33 The information alleges that Mr. Williams was armed with a firearm for counts III, IV, and V. Clerk's Papers (CP) at 2. But the special verdicts ask only whether he had a deadly weapon. CP at 153-55. A deadly weapon enhancement adds two years, RCW 9.94A.533(4)(a), while a firearm enhancement adds five mandatory years, RCW 9.94A.533(3)(a).
¶ 34 The State concedes Mr. Williams' contention that a sentencing enhancement for a firearm requires a jury finding of a firearm; a deadly weapon finding is not enough. This is the holding, on essentially the same facts, of State v. Recuenco, 154 Wash.2d 156, 160, 110 P.3d 188 (2005) (citing Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)), cert. granted, ___ U.S. ___, 126 S.Ct. 478, 163 L.Ed.2d 362 (2005). And while it would seem that the harmless error doctrine would easily accommodate this error, that is not the holding in Recuenco.
¶ 35 We therefore remand for resentencing.

HOLDING
¶ 36 We affirm count V, the conviction for first degree murder. We reverse count IV, the conviction for attempted first degree robbery, because it merges with the first degree murder conviction. The evidence is sufficient to support only one conspiracy conviction, that for count III, conspiracy to commit first degree robbery. We accordingly affirm count III and reverse counts I and II. Finally, at resentencing, the verdict supports an enhancement for a deadly weapon, not a firearm.
WE CONCUR: KATO, C.J., and BROWN, J.
NOTES
[1] See, e.g., Report of Proceedings at 227, 231-32.