# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| IN THE MATTER OF THE PERSONAL RESTRAINT PETITION OF:<br><br>AMANDA CHRISTINE KNIGHT,<br><br>                Petitioner. | No.  49337-3-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — Amanda Christine Knight seeks relief from personal restraint following her jury trial convictions for the first degree felony murder of James Sanders; the first degree robberies of James[1] and his wife Charlene Sanders; the second degree assaults of Charlene and one of James's children, JS; and the first degree burglary.  We affirmed Knight's convictions on direct appeal.  *State v. Knight*, 176 Wn. App. 936, 309 P.3d 776 (2013).  In her personal restraint petition (PRP), Knight claims, for the first time, that because the jury instructions did not require the jury to specify which first degree robbery was the predicate offense for the felony murder conviction, her conviction for the first degree robbery of James merges with the felony murder conviction.  She also claims that because *State v. Whittaker*[2] changed the way that courts analyze the merger doctrine, we should reconsider our prior decision rejecting her argument that the convictions for

---

[1] Because the victims share the same last name we refer to them by their first names.  We intend no disrespect.

[2] *State v. Whittaker*, 192 Wn. App. 395, 367 P.3d 1092 (2016).

the first degree robbery of Charlene and the second degree assault of Charlene did not merge. Alternatively, Knight claims that the evidence is insufficient to support the convictions for the first degree felony murder of James and the convictions for the second degree assaults of Charlene and JS based on accomplice liability. In addition, she asserts that she received ineffective assistance of appellate counsel because her appellate counsel failed to adequately address her merger arguments on direct appeal.

We hold that (1) the independent purpose or effect rule prevents the merger of the convictions for the first degree felony murder and the first degree robbery of James, (2) *Whittaker* did not change the merger analysis, so we decline to reconsider Knight's other merger argument, (3) the evidence is sufficient to support the convictions for the first degree felony murder and the second degree assaults of Charlene and JS, and (4) Knight's appellate counsel did not provide ineffective assistance of appellate counsel by failing to adequately address the merger arguments. Accordingly, we deny this PRP.

FACTS

I. BACKGROUND

In April 2010, Knight, Kyoshi Higashi, Joshua Reese, and Clabon Berniard jointly participated in a home invasion robbery in Lake Stevens. *Knight*, 176 Wn. App. at 941. Not long after, on April 28, Higashi contacted Knight and told her that he wanted to commit another robbery.

After Higashi found a Craigslist advertisement for a wedding ring posted by James Sanders, Knight contacted James and asked to see the ring. Wanting to arrive after dark, Knight arranged to meet James at the Sanderses' house at 9:00 PM.

2

Knight drove Higashi, Berniard, and Reese to the Sanderses' house and parked so they could make a quick getaway. Higashi was in possession of Knight's firearm; Reese and Berniard were also armed. Reese and Berniard remained in the car. Knight and Higashi met James outside the house. The three then entered the Sanderses' kitchen.

Once inside, James gave an old wedding ring to Knight and Higashi. James then called upstairs to his wife, Charlene, to help him answer the questions that Knight and Higashi were asking about the ring. The Sanderses' two children, JS and CK, remained upstairs.

Knight told James that she was interested in buying the ring. At first, Higashi revealed a large amount of cash, but he then drew a gun and threatened James and Charlene. "Charlene and James told Higashi and Knight to take whatever they wanted and to leave." *Knight*, 176 Wn. App. at 942.

Knight zip-tied Charlene's hands behind her back and removed Charlene's wedding ring from her finger. Higashi zip-tied James's hands behind his back. After Knight or Higashi removed James's wedding ring from his finger, they ordered James and Charlene to lie face down on the floor.

Through a Bluetooth headset, Knight signaled Reese and Berniard to enter. "Knight knew that Reese and Berniard possessed loaded guns and that using these guns was part of the group's plan to carry out the Sanderses' home invasion robbery." *Knight*, 176 Wn. App. at 942.

Once inside the house, Reese and Berniard went upstairs and returned with the two Sanders children. At gunpoint, Reese and Berniard forced the boys to lie face down near the kitchen entryway. Charlene and JS watched as Knight and Higashi gathered items from the house. Knight also searched the main upstairs bedroom for additional items to steal.

While Knight was upstairs, Berniard held a gun to Charlene's head and asked where their safe was. When Charlene responded that they did not own a safe, Berniard kicked her in the head and threatened to kill her and her children. Charlene believed she was going to die. She eventually admitted that there was a safe in the garage, and Berniard forced James into the garage to open the safe.

When Berniard forced James into the garage to open the safe, James broke free of his restraints and attacked Berniard. "Berniard shot James in the ear, knocking him unconscious." *Knight*, 176 Wn. App. at 943. JS then jumped on Berniard. Berniard "threw JS off and began hitting him with the butt of his firearm." *Knight*, 176 Wn. App. at 943.

Reese then dragged James through the kitchen and into the adjacent living room, where they were out of sight. "Either Reese or Berniard shot James multiple times, causing fatal internal bleeding." *Knight*, 176 Wn. App. at 943.

Immediately following the gunshots, the four intruders fled. After they left, Charlene found James on the living room floor and called 911.

James was declared dead at the scene. JS was treated at the hospital for bruising and bleeding around his left ear. JS's scars were still visible a year later. In addition to the rings, the intruders took a PlayStation, an iPod, and a cellular phone from the Sanderses' house.

The next morning, Knight, Higashi, and Reese drove to California. On their way, they sold the Sanderses' PlayStation and Knight's firearm. California police eventually arrested them on unrelated charges. After posting bail, Knight pawned James's wedding ring, returned to Washington, and turned herself into the police.

4

II. PROCEDURE

A. TRIAL

The State charged Knight with (1) first degree felony murder of James (Count I), (2) first degree robbery of James (Count II), (3) second degree assault of JS (Count III), (4) first degree robbery of Charlene (Count IV), (5) second degree assault of Charlene (Count V), and (6) first degree burglary (Count VI). The State alleged that Knight acted as an accomplice to all of these crimes and that one of the participants in the crime was armed with a firearm when each of the crimes occurred.

As to the first degree robbery charges, the jury instructions did not explicitly state that the robberies were based on the theft of James's and Charlene's wedding rings. The instructions stated that the jury had to find, "[t]hat in the commission of [the robbery] the defendant or an accomplice was armed with a deadly weapon," or "[t]hat in the commission of [the robbery] the defendant or an accomplice inflicted bodily injury." PRP, App. C (Jury Instruction 26).

As to the felony murder charge, the jury instructions provided that the State was required to prove that "the defendant or an accomplice committed Robbery in the First Degree." PRP, App. A (Instruction 9). The to convict jury instruction for the felony murder charge stated:

> To convict the defendant of the crime of Murder in the First Degree as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about April 28, 2010, the defendant or an accomplice committed Robbery in the First Degree;
>
> (2) That the defendant or an accomplice caused the death of James Sanders, Sr., in the course of or in furtherance of such crime;
>
> (3) That James Sanders, Sr. was not a participant in the crime of Robbery in the First Degree; and
>
> (4) That any of these acts occurred in the State of Washington.

PRP, App. A (Instruction 9).

During closing argument, the State discussed the elements of each charge as set out in the court's jury instructions and summarized the evidence supporting the elements of each charge. The State specifically argued that the first degree robberies of James and Charlene were based on the taking of James's and Charlene's wedding rings at gunpoint.

Specifically, the State argued,

I'm going to go through [the to convict jury instructions], briefly, the elements of these crimes have been admitted to by Ms. Knight and the evidence is clear that she committed each and every one of these crimes. The [S]tate has to prove on April [28], 2010, the defendant or an accomplice unlawfully took personal property from the person of James Sanders. You will recall this happened on April [28th] and *the wedding ring was taken from Jim's hand*, leading directly to [Knight] because she pawned that wedding ring in California.

The defendant intended to commit theft of property. She told the [S]tate that that was their intention was to rob the Sanders. It is against a person's will by use of force, violence, or fear. Kyoshi Higashi pointed a gun at James Sanders. He pointed it at Charlene as well. She was beaten profusely, badly. The force or fear was used by the defendant or an accomplice to obtain or retain possession of the property. This was accomplished when he pointed the gun. It was facilitated when Amanda zip-tied Charlene, put her on the ground, Higashi zip-tied Jim Sanders, and *his wedding ring was stolen*.

The [S]tate has to prove that either A or B, that the defendant or an accomplice was armed with a deadly weapon—and a firearm is a deadly weapon— or that the defendant or an accomplice inflicted bodily injury. And Jim Sanders was beaten. . . .

The same thing with respect to robbery in the first degree in Count IV. That's the robbery specific to Charlene. The same elements apply, and the [S]tate has to prove each and every one of them. No issue that it occurred on April 28th. Amanda Knight *took the ring from Charlene's finger*. She admitted that they went there to rob the Sanders and the Sanders were held at gunpoint and zip-tied. The defendant's accomplice, Kyoshi Higashi, brandished the initial firearm, and then YG and Reese came in with additional firearms. Charlene was beaten, kicked in the head, and sustained significant injury. Certainly *Charlene didn't offer her ring*

> *as a gift. It was taken from her by force and fear.* Higashi pointed a gun at Charlene Sanders, and the defendant, Amanda Knight, zip-tied her and put her on the ground. Charlene was also kicked and beaten.

7 Verbatim Report of Proceedings (VRP) at 1002-04 (emphasis added).

To prove the felony murder charge, the State focused on robbery of the rings, but the State did not specify whether the felony murder charge was based on the robbery of James's ring or the robbery of Charlene's ring:

> With respect to murder in the first degree, which is Count I in your jury instructions, again, no issue that this occurred on April 28. *Charlene testified that her wedding ring was stolen, Jim's wedding ring was stolen.* The [S]tate has to prove that the defendant or an accomplice caused the death of someone who is not a participant in the crime. . . . Higashi shot and killed James Sanders, Senior, in the course of this robbery.

7 VRP at 1007 (emphasis added).

During her closing argument, Knight admitted to her participation in the initial robbery of James's and Charlene's rings. Knight claimed, however, that she had done so under duress from Higashi, who had coerced her to participate in the Sanderses' home invasion, the burglary, and the robberies. Knight distanced herself from Berniard's later "brutal" assaults of James and Charlene by arguing that she had neither planned nor participated in these two assaults, which she claimed she did not even witness. *Knight*, 176 Wn. App. at 946-47; 7 VRP at 1034.

The jury found Knight guilty on all counts. The verdict form stated, "We, the jury, find the defendant Guilty of the crime of Murder in the First Degree as charged in Count I." PRP, App. B. The verdict form did not specify which robbery was the predicate offense for the felony murder conviction.

At sentencing, Knight argued that the convictions for the two second degree assaults and the two robberies should merge and that the conviction for the assault of James should merge into the felony murder conviction. She also argued that, for sentencing purposes, all of her convictions were based on the same criminal conduct and, therefore, she should only be sentenced on the first degree felony murder conviction. During Knight's sentencing argument, she confirmed that the robbery of James was based on "the taking of the ring at gunpoint." 8 VRP at 1076.

In response, the State characterized Knight's argument as a double jeopardy argument asserting that the convictions for the two counts of second degree assault should merge into the convictions for the robberies because the assaults elevated the degree of the robberies to first degree robberies. During this argument, the State again emphasized that the robberies were completed "when the rings were removed from Charlene['s] finger and James['s] finger," so that the robberies could not merge with the later assaults of Charlene and JS. 8 VRP at 1083-84.

> The trial court rejected Knight's arguments and ruled that
>
> [T]he robbery, that is, of the ring, was completed before the assaults and the murder occurred. Therefore, although they occurred in the same place, [the first degree felony murder, the two robberies, and the assault of Charlene, did] not occur at the same time. The robbery of James['s ring] was completed, as well as the robbery of Charlene Sanders, at the time their rings were stolen. And therefore, the murder and the assaults would not be the same criminal conduct because of that.
>
> In addition, we have a different person involved in the assaults, which is Clabon Berniard, and therefore, it's a completely separate criminal act for that purpose.

8 VRP at 1090; *Knight*, 176 Wn. App. at 960.

B. DIRECT APPEAL

Knight appealed her convictions. In a published opinion, we rejected her arguments and her claims in her statement of additional grounds for review in.

We held that (1) the evidence was sufficient to support the two second degree assault convictions, (2) Knight's argument, that the second degree assault of Charlene and the first degree robbery of Charlene merged, failed because the second degree assault was not used to elevate the robbery to first degree robbery, (3) Knight did not receive ineffective assistance of counsel at sentencing, (4) the convictions for first degree felony murder and first degree robbery of James were not the same criminal conduct because the robberies were complete before the felony murder and, therefore, the robberies were not committed at the same time as the felony murder, (5) the first degree robbery of Charlene and the second degree assault of Charlene were not the same criminal conduct because they were not committed at the same time, (6) the burglary and the other offenses were not the same criminal conduct under the burglary antimerger statute,[3] and (7) Knight's special verdict unanimity argument failed. The direct appeal mandated on March 7, 2014.

Knight filed this PRP on July 14, 2016.

ANALYSIS

Knight argues that (1) her convictions for the first degree robbery of James (Count II) and the first degree felony murder of James (Count I) violate double jeopardy because the convictions merge, (2) because *Whittaker* changed the way the courts analyze the merger doctrine, we should reconsider our prior holding that her convictions for the first degree robbery of Charlene (Count

---

[3] RCW 9A.52.050.

IV) and the second degree assault of Charlene (Count V) did not merge, (3) the evidence is insufficient to support the convictions for the first degree felony murder of James (Count I) and the two counts of the assault of Charlene (Count V) and JS (Count III) based on accomplice liability, and (4) she received ineffective assistance of appellate counsel because appellate counsel failed to properly present her merger arguments on direct appeal. These arguments fail.

## I. PRP STANDARDS

A PRP is not a substitute for direct appeal and the availability of collateral relief is limited. *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328-29, 823 P.2d 492 (1992). To be entitled to relief, Knight must show either a constitutional violation that resulted in actual and substantial prejudice or a nonconstitutional error that constituted a fundamental defect that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017) (citing *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 676-77, 327 P.3d 660 (2014)).

## II. TIMELINESS

The first question we must address is whether this petition is time barred. We hold that it is not.

Under RCW 10.73.090, no collateral attack on a judgment may be filed more than one year after the judgment and sentence becomes final unless the judgment and sentence is invalid on its face or each issue falls under one of the exceptions to the time bar stated in RCW 10.73.100. RCW 10.73.100 provides in relevant part:

> The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds:
>
> . . . .
>
> (3) The conviction was barred by double jeopardy under Amendment V of the United States Constitution or Article I, section 9 of the state Constitution;

10

(4) The defendant pled not guilty and the evidence introduced at trial was insufficient to support the conviction;

Knight's judgment and sentence became final on March 7, 2014, when we mandated Knight's direct appeal. RCW 10.73.090(3)(b). Knight filed this petition in July 2016, more than one year after the direct appeal was final. Accordingly, Knight's petition is time barred unless each of the issues she now raises fall within one of the exceptions in RCW 10.73.100.

Knight's merger claims implicate double jeopardy, so they fall under the exception to the time bar in RCW 10.73.100(3). Knight's sufficiency of the evidence claim falls under the exception in RCW 10.73.100(4). Thus, because each of these claims fall under an exception to the one year time bar, we consider them on the merits.

### III. DOUBLE JEOPARDY AND MERGER CLAIMS

Knight first argues that (1) in order to avoid a double jeopardy issue, the first degree felony murder and the first degree robbery of James convictions must merge, and (2) we should reconsider our prior holding that the first degree robbery of Charlene and the second degree assault of Charlene convictions did not merge because *Whittaker* changed the merger analysis. These arguments fail.

### A. LEGAL PRINCIPLES

The federal and state double jeopardy clauses prohibit the imposition of multiple punishments for the same offense. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004); *see* U.S. CONST. amend V; WASH. CONST. art. I, § 9. Double jeopardy involves questions of law that we review de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). "'The double jeopardy doctrine protects a criminal defendant from being (1) prosecuted a

second time for the same offense after acquittal, (2) prosecuted a second time for the same offense after conviction, and (3) punished multiple times for the same offense.'" *State v. Fuller*, 185 Wn.2d 30, 33-34, 367 P.3d 1057 (2016) (quoting *State v. Linton*, 156 Wn.2d 777, 783, 132 P.3d 127 (2006)).

*Freeman* outlined a three-part inquiry to apply to double jeopardy claims. *Freeman*, 153 Wn.2d at 771-73. First, we search for express or implicit legislative intent to punish the crimes separately. *Freeman*, 153 Wn.2d at 771-72. Second, if there is no clear statement of legislative intent, we may apply the "same evidence" or *Blockburger*[4] test, which asks if the crimes are the same in law and in fact. *Freeman*, 153 Wn.2d at 772. And third, we may use the merger doctrine to discern legislative intent where the degree of one offense is elevated by conduct constituting a separate offense.[5] *Freeman*, 153 Wn.2d at 772-73; *see State v. Kier*, 164 Wn.2d 798, 804, 194 P.3d 212 (2008) (stating the inquiry is a "three-part test").

Knight does not address the first two prongs of the *Freeman* inquiry. She argues only that the merger doctrine applies here. Accordingly, we address only the applicability of the merger doctrine. *See Kier*, 164 Wn.2d at 805 n.1 (analyzing only the applicability of the merger doctrine where neither party suggested that the analysis under steps (1) and (2) would differ from *Freeman*).

---

[4] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[5] We acknowledge that case law suggests that merger may be raised as a stand-alone claim. *See e.g. State v. Novikoff*, 1 Wn. App.2d 166, 172-73, 404 P.3d 513 (2017). But that is not the case here because Knight expressly raises her merger argument in the context of a double jeopardy claim and *Freeman* establishes that merger can be examined as part of a double jeopardy analysis. *Freeman*, 153 Wn.2d at 771-73.

Merger claims may be raised for the first time on review. *See State v. Ralph*, 175 Wn. App. 814, 823, 308 P.3d 729 (2013). The merger doctrine is a rule of statutory construction that applies only when the legislature has clearly indicated that in order to prove a particular degree of crime, the State must prove not only that a defendant committed the crime but that the crime was accompanied by an act that is defined as a crime elsewhere in the criminal statutes. *State v. Vladovic*, 99 Wn.2d 413, 420-21, 662 P.2d 853 (1983). Under the merger doctrine, we presume that "the legislature intended to punish both offenses through a greater sentence for the greater crime." *Freeman*, 153 Wn.2d at 773.

Despite this presumption, *Freeman* recognizes an exception to the merger doctrine that focuses on the individual facts of the case. *Freeman*, 153 Wn.2d at 779. Even if two convictions appear to merge on an abstract level, the convictions may be punished separately if each conviction has an independent purpose or effect. *Freeman*, 153 Wn.2d at 773. In other words, offenses that might otherwise merge may be punished separately "when there is a separate injury to . . . 'the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element.'" *Freeman*, 153 Wn.2d at 778-79 (quoting *State v. Frohs*, 83 Wn. App. 803, 807, 924 P.2d 384 (1996)). *Freeman* underscored the need for a reviewing court to take a "hard look at each case" based on its facts, the charged crimes, and even the jury instructions in the case. *Freeman*, 153 Wn.2d at 774; *Kier*, 164 Wn.2d at 811-12 (examining the jury instructions when evaluating defendant's merger argument).

B.  THE ROBBERY AND FELONY MURDER

Knight argues that the convictions for the first degree robbery of James and the felony murder of James violate double jeopardy because the convictions merge. Specifically, she argues

that under *Whittaker*, because the jury instructions did not specify which first degree robbery charge was the predicate offense for the first degree felony murder charge, the rule of lenity requires us to assume that the predicate offense was the first degree robbery of James and there was "no 'independent purpose' between the robbery and the felony murder."[6] PRP at 11. Even presuming, but not deciding, that the rule of lenity[7] requires us to use the robbery of James's ring as the predicate offense for the felony murder, this argument fails because the robbery of James's ring had an independent purpose or effect from the felony murder.[8]

---

[6] Knight argues in her reply that the first degree robbery of James was not complete when James's ring was taken because it was an ongoing home invasion robbery. This argument was not clear in her opening briefing, and we can decline to address a new issue raised in a responsive brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). But even if we were to consider this argument, it has no merit because, as Knight later admits in her supplemental PRP, the State clearly limited the robberies to the robberies of the rings.

[7] Although the rule of lenity generally applies when statutes are ambiguous, it may also apply in the context of merger. *See Kier*, 164 Wn.2d at 811-14 (applying the rule of lenity to appellant's merger argument); *State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991) (when a statute is ambiguous, "The rule of lenity requires the court to adopt an interpretation most favorable to the criminal defendant.").

[8] To the extent Knight is arguing that *Whittaker* changes the independent purpose or effect test, we disagree. Although the *Whittaker* court addressed merger, it did not discuss the independent purpose or effect test. *Whittaker*, 192 Wn. App. at 409-16.

Here, the evidence showed that Higashi pulled out a gun, zip-tied James's hands behind his back, and either he or Knight removed James's ring. *Knight*, 176 Wn. App. at 942; RP 581, 693. The State argued and proved that the first degree robbery of James's ring was completed when Higashi threatened Charlene with a firearm and either he or Knight removed James's ring.[9] *Knight*, 176 Wn. App. at 954; VRP 581, 693, 997-1003; 7 VRP at 1030. Knight also admitted during closing argument that the purpose of the robbery was to obtain the Sanderses' property, the rings, and engage in a home invasion. *Knight*, 176 Wn. App. at 947; 7 VRP at 1036-37.

The felony murder to convict instruction did not, however, specify which of the two charged first degree robberies was the predicate offense. To prove the felony murder charge, the State relied on the following facts and evidence: (1) the murder of James happened after the robbery of James's ring was complete, (2) once Higashi or Knight took James's ring, the charged robbery was complete, (3) the murder of James took place after Berniard kicked Charlene in the head, pointed a gun at her head, and started to countdown after threatening to kill her if she did not disclose the location and combination of the safe and Berniard forced James to the garage to open the safe, and (4) Berniard first shot James when James began to fight him, while they were in the garage and then he and/or Reese fatally shot James several more times after dragging him into the living room.

---

[9] The dissent at 24 asserts that we misread *Knight* because *Knight* does not say that the robbery of James's ring was complete at this point. But we are not saying that *Knight* says this. We merely cite to *Knight* for facts. The conclusion that the robbery of James's ring (and Charlene's) was complete when the rings were removed is our legal conclusion.

The subsequent felony murder of James resulted from the later actions committed by two other co-accomplices, Berniard and Reese, with Knight as an accomplice. The felony murder of James did not occur until after the robbery of the rings was complete and Knight's accomplices were attempting to rob the Sanderses' safe.[10] Further, the injury sustained by James during his murder (James' death) was distinct from the injury he sustained during the robbery of his ring (the loss of his ring). Thus, the robbery of James's ring was an "injury to . . . 'the person or property of the victim or others, which [wa]s separate and distinct from" the force used in the murder of James. *See Freeman*, 153 Wn.2d at 778-79 (quoting *Frohs*, 83 Wn. App. at 807). Thus, under *Freeman*, we hold that Knight's convictions for the first degree robbery of James and the felony murder of James do not merge and thus, Knight's double jeopardy claim on this basis fails.

IV. FIRST DEGREE ROBBERY OF CHARLENE AND SECOND DEGREE ASSAULT OF CHARLENE

Knight argues that *Whittaker* has changed the analysis for the merger doctrine articulated in *Freeman*. Knight also argues that in the interests of justice under RAP 16.4(d), we should reconsider the holding on direct appeal that the convictions for first degree robbery of Charlene

---

[10] By saying that the robbery of the rings was complete, we do not imply, as the dissent suggests, that the predicate offense for the felony murder was an uncharged attempted robbery. Dissent at 25. We are referring to the completed robberies of the rings in relation to the defendants' later acts to demonstrate that the predicate robbery was not sufficiently intertwined with the robbery of the rings to justify merger.

Furthermore, to the extent the dissent suggests that the independent purpose and effect test does not apply when the predicate robbery is considered a transactional crime, that approach would mean that felony murders based on the predicate offense of robbery could never merge. Case law does not support that conclusion. *See e.g. State v. Saunders*, 120 Wn. App. 800, 820-24, 86 P.3d 232 (2004) (holding that defense counsel was not ineffective for failing to argue that the predicate offenses of rape, robbery, and kidnapping merged with the felony murder conviction because the predicate offenses were not sufficiently intertwined with the murder and were separate and distinct for purposes of merger analysis); *see also State v. Peyton*, 29 Wn. App. 701, 720, 630 P.2d 1362 (1981) (refusing to merge predicate robbery with felony murder).

(Count IV) and the two counts of second degree assault of Charlene (Count V) and JS (Count III) did not merge. Because we hold that *Whittaker* does not change the merger doctrine, we decline to reconsider our prior holding on direct appeal.

In *Whittaker*, the defendant was convicted of one count of felony stalking and one count of felony violation of a protection order. On appeal, the defendant argued that his convictions merged because the stalking verdict failed to specify which violation of the court's protection order elevated the conviction to a felony. Division One of this court applied the well-established rule for merger and recognized the exception to the merger doctrine articulated in *Freeman*. In its analysis, the court explained:

> Specifically, to convict [the defendant] of felony stalking, the jury had to find at least two instances of either harassment or following and at least one violation of the court order. To convict [the defendant] of violation of the court order, the jury had to find that [the defendant] violated the protection order at least once. But the jury verdict is silent on which incidents it chose to reach its verdicts.
>
> For example, the jury could have found that [the defendant] repeatedly followed [the victim] on January 3 based on the incident we earlier described that occurred at her salon. One of these two "followings" could also have served as the basis for finding him guilty of violation of the court order protecting [the victim].
>
> Of course, this incident at the salon does not exclude the possibility that the jury could also have based its stalking conviction on [the defendant's] repeatedly harassing [the victim] by text and otherwise prior to January 3 and during the charging period. But this possibility does nothing to clarify what the jury actually did in this case. Thus, this alternative scenario does not cure the problem of the ambiguous verdict. We simply cannot exclude the possibility that the jury convicted on the basis of the first scenario that we described above. The rule of lenity applies. The convictions must merge.

*Whittaker*, 192 Wn. App. at 415-16 (footnote omitted).

Knight claims that the analysis in *Whittaker* demonstrates that the merger doctrine must be analyzed based on the jury instructions and the jury verdicts alone. Knight also claims that, by

following *Whittaker*, we no longer consider the individual facts of the case to determine whether certain counts should merge. We disagree because Knight misreads *Whittaker*.

*Whittaker* does not address the independent purpose or effect exception to the merger doctrine. The court there never reached the issue of whether the independent purpose or effect exception applied because the ambiguous jury verdict did not allow the court to determine which violation of the court's protection order elevated the stalking to a felony. *Whittaker*, 192 Wn. App. at 415-16.

*Whittaker* only addresses the first part of the merger doctrine—whether one offense raises the degree of another offense. It does not address the independent purpose or effect exception to the merger doctrine, which is the issue here. Accordingly, *Whittaker* does not change the law or analysis of the merger doctrine or the independent purpose or effect exception under *Freeman*.

As to Knight's claim that we should reconsider our prior holding, a petitioner may not renew a claim that was raised and rejected on the merits on direct appeal unless the petitioner shows that the interest of justice require reconsideration under RAP 16.4(d). *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). On direct appeal, we addressed whether the convictions for the assault and the robbery of Charlene merged. *Knight*, 176 Wn. App. at 953. In rejecting Knight's merger argument, we relied on the well-established principles for merger articulated in *Freeman* and held that the second degree assault of Charlene was not necessary to elevate the degree of the robbery of Charlene to first degree. *Knight*, 176 Wn. App. at 953-56. And as explained above, *Whittaker* does not change the law regarding the merger doctrine or its application here. Accordingly, there are no grounds for reconsidering Knight's merger argument in her PRP.

## V. SUFFICIENCY OF THE EVIDENCE

Knight next argues that if we reject her merger arguments, there was insufficient evidence to support her convictions for first degree felony murder (Count I) or the second degree assaults of Charlene (Count V) and of JS (count III) because she was not an accomplice to those crimes. She further argues that if we hold that the robberies were complete when the rings were taken, there was insufficient evidence that the killing took place in the course of or in furtherance of the robbery. We disagree.

A petitioner claiming insufficiency of the evidence admits the truth of the State's evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All inferences from the evidence must be drawn in favor of the State and most strongly against the petitioner. *Salinas*, 119 Wn.2d at 201. Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). These standards are the same for appeals and PRPs. *See In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011).

Knight argues that she was only an accomplice to the robberies and that if we hold that those robberies were completed when the rings were taken from James and Charlene, she could not be an accomplice to the felony murder or the second degree assaults of Charlene and JS. We disagree.

Although the charged robberies were complete when the rings were taken, there was sufficient evidence to allow the jury to conclude that Knight agreed to participate in more than just the robbery of the rings. The fact that Knight continued to search the house for additional items to steal would allow the jury to conclude that Knight had also agreed to participate in a broader

robbery, a home invasion, and that the later assaults of Charlene and JS and the later felony murder of James were related to the broader robbery, the home invasion. Because the robberies were not all completed at the time when Charlene and JS were assaulted and when James was murdered, her sufficiency of the evidence claim fails.

In addition, even if we conclude that the robberies of the rings were the predicate offenses for the felony murder and that those offenses were completed, there was still sufficient evidence to prove that the killing took place during the course of or in furtherance of the robberies because "[a] homicide is deemed committed during the perpetuation of a felony, for the purpose of felony murder, if the homicide is within the 'res gestae' of the felony, *i.e.*, if there was a close proximity in terms of time and distance between the felony and the homicide." *State v. Leech*, 114 Wn.2d 700, 706, 790 P.2d 160 (1990). In *Leech*, the court held that although the crime of arson was complete when the defendant intentionally set a fire, the death of a firefighter that occurred while the fire was still burning was close enough in time and place to the arson to be within the res gestae of that felony. 114 Wn.2d at 708. Here, as in *Leech*, even if we presume that the robberies were completed when the rings were taken, James's death still occurred in close proximity in terms of time and distance to the felony. The death occurred shortly after the rings were taken and before Knight and her accomplices left the home where the robbery took place. Accordingly, Knight's sufficiency of the evidence argument fails.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIM

Finally, Knight argues that she received ineffective assistance of appellate counsel because appellate counsel failed to adequately brief the merger arguments that Knight has presented in this PRP. We disagree.

No. 49337-3-II

To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that (1) the legal issue appellate counsel failed to raise had merit and (2) the petitioner was actually prejudiced by the failure to raise or adequately raise the issue. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100 P.3d 279 (2004). Because the legal issues Knight asserts that her appellate counsel failed to adequately raise have no merit, Knight's ineffective assistance of appellate counsel claim fails.

CONCLUSION

We deny Knight's PRP.

SUTTON, J.

I concur:

BJORGEN, C.J.

MELNICK, J. — (Dissent) I respectfully dissent from the majority's conclusion that Amanda Christine Knight's convictions for felony murder in the first degree and robbery in the first degree do not merge. It is based on an incorrect interpretation of the facts of this case and the law.

The State charged Knight with felony murder in the first degree and robbery in the first degree. The predicate felony for the felony murder was robbery in the first degree.

I.    FELONY MURDER

A person is guilty of felony murder in the first degree if, in relevant part, she commits, or attempts to commit, "robbery in the first degree . . . and in the course of or in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants." RCW 9A.32.030(1)(c).

In a felony murder prosecution, the intent to commit the predicate felony substitutes for the mens rea that is otherwise necessary to establish murder. *State v. Craig*, 82 Wn.2d 777, 781, 514 P.2d 151 (1973); *State v. Muhammad*, 4 Wn. App. 2d 31, 63, 419 P.3d 419, *review granted*, 428 P.3d 1177 (2018). Where the predicate felony is robbery, if the killing and the robbery are parts of the same transaction, it is immaterial if the property is taken before or after the killing. *Craig*, 82 Wn.2d at 781-82; *State v. Coe*, 34 Wn.2d 336, 341, 208 P.2d 863 (1949).

The trial court instructed the jury that to convict Knight of murder in the first degree, the State had to prove beyond a reasonable doubt that "the defendant or an accomplice committed Robbery in the First Degree [and] . . . the defendant or an accomplice caused the death of James

No. 49337-3-II

Sanders, Sr,[11] in the course of or in furtherance of such crime." Pers. Restraint Petition (PRP)

App. A (Instr. 9).

In closing argument, the State argued that the felony murder was based on the robbery of

the rings.

> With respect to murder in the first degree, which is Count I in your jury instructions, again, no issue that this occurred on April 28. Charlene testified that her wedding ring was stolen, Jim's wedding ring was stolen. The state has to prove that the defendant or an accomplice caused the death of someone who is not a participant in the crime. Excuse me. Higashi shot and killed James Sanders, Senior, in the course of this robbery.

Report of Proceedings (RP) at 1007.[12]

The majority holds that Knight's conviction of first degree robbery does not merge with

felony murder. The majority's decision rests on the grounds that James's death occurred not in

the course of or in furtherance of the robbery in the first degree, but of a separate attempted

robbery. Not only did the court fail to instruct in this manner, the State never argued this theory.

The majority's decision is not supported by the record before us or the established law.

---

[11] To follow the majority and because the victims share the same last name we refer to James by his first name. We intend no disrespect.

[12] The State's supplemental briefing argues, "There is ample evidence in the record to support the State's theory that the felony murder occurred based on the robbery of the safe and not of the rings, giving an independent purpose to each robbery." Suppl. Br. Resp't at 3. The State never argued this theory at trial, and the theory is contrary to the jury instructions. In addition, the State could not have argued this theory because there was only an attempted robbery of the safe. The State only charged and alleged a completed robbery, not an attempted robbery.

II.    ROBBERY

The majority's decision is premised on an assumption that the first degree robbery was "complete" after Knight took James's ring, and therefore the robbery was independent from the killing. This premise is contrary to the transactional analysis of robbery.

Washington has adopted a "transactional" analysis of robbery. *State v. Handburgh*, 119 Wn.2d 284, 290, 830 P.2d 641 (1992); *State v. Truong*, 168 Wn. App. 529, 535-36, 277 P.3d 74 (2012). Until the defendant has escaped, the taking is considered to be ongoing. *Truong*, 168 Wn. App. at 535-36; *State v. Manchester*, 57 Wn. App. 765, 770, 790 P.2d 217 (1990). "The definition of 'robbery' thus includes 'violence during flight immediately following the taking.'" *Truong*, 168 Wn. App. at 536 (quoting *Manchester*, 57 Wn. App. at 770). The *Handburgh* court noted, "Implicit in the *Manchester* holding is the assumption a taking can be ongoing or continuing so that the later use of force to retain the property taken renders the actions a robbery." *Handburgh*, 119 Wn.2d at 290.

The majority asserts that the "State argued and proved that the first degree robbery of James' ring was completed when Higashi threatened Charlene with a firearm and either he or Knight removed *James's ring*." Majority at 14-15 (emphasis added) (citing *State v. Knight*, 176 Wn. App. 936, 954, 309 P.3d 776 (2013)). However, *Knight* does not discuss when Knight or an accomplice completed the robbery of James's ring. "[T]he record shows that this first-degree robbery was completed when Higashi threatened Charlene with a firearm and Knight removed *Charlene's wedding ring*." *Knight*, 176 Wn. App. at 9554

24

The majority's decision is also contrary to *State v. Roberts*, 142 Wn.2d 471, 512-13, 14 P.3d 713 (2000), and *State v. Cronin*, 142 Wn.2d 568, 579, 14 P.3d 752 (2000). The court emphasized that for a defendant to be guilty as an accomplice, the state must show she possessed general knowledge she aided the commission of the crime, not just any crime. *Roberts*, 142 Wn.2d at 512-13; *Cronin*, 142 Wn.2d at 579.

In the present case, the court instructed the jury that it must find that Knight, acting as a principal or an accomplice, caused the death of another in the course of and in furtherance of robbery in the first degree, not of a separate attempted robbery.

Based on the transactional view of robbery, the charged robbery was ongoing and not completed until Knight and her accomplices escaped. It was not completed when Knight and her accomplices took the rings. Contrary to the majority's conclusion, James was killed in the course of and furtherance of the robbery in the first degree.

III. MERGER[13]

Knight argues that her robbery conviction merges with her conviction for felony murder.[14] The majority holds that the robbery conviction does not merge with felony murder because the robbery had an "independent purpose or effect from the felony murder." Majority at 14. I disagree with the majority.

---

[13] I am aware that the Supreme Court has accepted review of a similar issue in *Muhammad*, 4 Wn. App. 2d 31. However, the court may only rule on the double jeopardy issue and not the merger one.

[14] Knight is only arguing merger and not double jeopardy. This position is clear since her briefs do not cite to or reference applicable federal or state constitutional provisions.

"The merger doctrine, independent of double jeopardy concerns, evaluates whether the legislature intended multiple crimes to merge into a single crime for punishment purposes. The merger doctrine applies only when, in order to prove a more serious crime, the State must prove an act that a statute defines as a separate crime." *State v. Novikoff*, 1 Wn. App. 2d 166, 172-73, 404 P.3d 513 (2017) (assault providing factual basis for fourth degree assault was also element of no contact order violation). "Whether the merger doctrine bars double punishment is a question of law that we review de novo." *State v. Williams*, 131 Wn. App. 488, 498, 128 P.3d 98 (2006), *adhered to on remand*, 147 Wn. App. 479, 195 P.3d 578 (2008).

"The merger doctrine applies when the legislature clearly indicates that it did not intend to impose multiple punishments for a single act that violates several statutory provisions." *Muhammad*, 4 Wn. App. 2d at 63-64 (citing *State v. Vladovic*, 99 Wn.2d 413, 420-21, 662 P.2d 853 (1983)). "[W]hen the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime." *State v. Freeman*, 153 Wn.2d 765, 772-73, 108 P.3d 753 (2005). "Generally, a predicate offense will merge into the second crime, and the court may not punish the predicate crime separately." *Muhammad*, 4 Wn. App. 2d at 63.

We look to the statutory elements of each crime to assess "whether the legislature intended to impose a single punishment for a homicide committed in furtherance of or in immediate flight from an armed robbery." *Williams*, 131 Wn. App. at 498. "The offenses merge if the essential elements of the homicide include all the elements of the robbery, such that the facts establishing one necessarily also establish the other." *Williams*, 131 Wn. App. at 498 (citations omitted); *cf. Pers. Restraint of Schorr*, 191 Wn.2d 315, 326, 422 P.3d 451 (2018) (noting that if the defendant

had pleaded guilty to first-degree felony murder predicated on first-degree robbery, first-degree felony murder would merge with the first-degree robbery). The robbery would not merge only if it was "merely incidental" to the homicide. *Williams*, 131 Wn. App. at 499.

We do, however, apply an exception to the merger doctrine where the two offenses do not intertwine. *Muhammad*, 4 Wn. App. 2d at 63; *see State v. Harris*, 167 Wn. App. 340, 355, 272 P.3d 299 (2012) (holding merger doctrine applicable when one crime incidental to commission of second crime). The two crimes "may be punished separately if the defendant's conduct forming one crime demonstrates an independent purpose or effect from the second crime." *Muhammad*, 4 Wn. App. 2d at 63 (citing *State v. Kier*, 164 Wn.2d 798, 804, 194 P.3d 212 (2008)). "[I]f the predicate crime injures the person or property of the victim or others in a separate and distinct manner from the crime for which it serves as an element, the crimes do not merge." *Muhammad*, 4 Wn. App. 2d at 64 (citing *Harris*, 167 Wn. App. at 355).

A. Knight's Convictions of Felony Murder and First Degree Robbery are Intertwined

The statute and the established precedent demonstrate the intertwinement between the robbery and the killing. Knight was convicted of first degree felony murder,[15] which "expressly require[s] an associated conviction for another crime." *Williams*, 131 Wn. App. at 499. A person is guilty of murder in the first degree when: "He or she commits or attempts to commit the crime of . . . (1) robbery in the first or second degree . . . *and in the course of or in furtherance of such crime or in immediate flight therefrom,* he or she, or another participant, causes the death of a person other than one of the participants." RCW 9A.32.030(1)(c) (emphasis added). A separate

---

[15] RCW 9A.32.030(1)(c).

conviction for the predicate crime is, therefore, contrary to the legislative intent and the offenses merge. *Williams*, 131 Wn. App. at 499. The plain language of RCW 9A.32.030 necessarily requires that the killing be intertwined with the predicate robbery. In this case it is the robbery in the first degree.

In *Williams*, the court concluded that the predicate offense of attempted robbery merged with the felony murder conviction. 131 Wn. App. at 497. The court rejected the state's argument that the attempted robbery was factually disconnected from the felony murder or served a different purpose or intent from it. *Williams*, 131 Wn. App. at 498. In so doing, it ruled the robbery was integral to the killing.

> If, as the State suggests, the jury found the attempted robbery was complete when Mr. Williams took some undefined substantial step earlier in the evening, then it could not have found that the shooting was in furtherance of or in flight from that attempt. And the first degree murder conviction could not stand. Likewise, the State's assertion that the two crimes were completely unrelated is inconsistent with the felony murder charge.

*Williams*, 131 Wn. App. at 499.

Similarly here, if, as the State suggests, the robbery was completed after Knight or her accomplices took James's ring, then the jury could not have found that the shooting was in furtherance of or in flight from that robbery, and the murder in the first degree conviction could not stand. And, the State's assertion that the killing and robbery have unrelated purposes is inconsistent with the felony murder charge. The majority's conclusion appears to ignore critical language in both the felony murder statute and court's instructions to the jury.

The majority's holding is inapposite to the jury's finding that the killing was in the course of or furtherance of the robbery. The majority fails to explain how the robbery had ended and had

an independent purpose from the killing, but also that the killing occurred in the course of or furtherance of the robbery. The majority essentially holds that a defendant can be convicted of and sentenced for first degree felony murder where the killing was not committed in the course of the predicate felony. The majority's conclusion contradicts the legislature's clear intent in requiring that first degree felony murder be based on a killing committed during the course of or furtherance of an enumerated felony. *See* RCW 9A.32.030.

Even ignoring the contradiction with RCW 9A.32.030 and the jury instructions, the record demonstrates that the robbery and killing were intertwined. Knight and her accomplices committed a home invasion robbery in Lake Stevens, Washington. *Knight*, 176 Wn. App. at 941. One accomplice contacted Knight and said he wanted to commit another robbery. They targeted James, arrived at his house, zip-tied Charlene and James and forced them to lay face down on the floor. One of Knight's accomplices held a gun to the back of Charlene's head, and repeatedly yelled at Charlene and James, demanding to know where their safe was located. Ultimately, Charlene told Knight's accomplices that there was a safe. James was led to the garage to open the safe. James told the intruders a code for the safe, and then broke free of the zip ties and began fighting with Knight's accomplice. During that fight, James was shot.

In short, the record demonstrates that during the commission of the home-invasion robbery, James fought with Knight's accomplices in an effort to stop the robbery, and Knight's accomplice shot James. Knight's accomplices' use of force was intertwined with facilitating the ongoing robbery. *See Freeman*, 153 Wn.2d at 778-79 (noting that force used to intimidate a victim into providing property "is often incidental" to robbery); *see also Truong*, 168 Wn. App. at 536 (holding that under Washington's transactional analysis of robbery, "the taking is ongoing until

the assailant has effected an escape").  I would hold that Knight's conviction for robbery in the first degree merges with first degree felony murder, and that there was not an independent purpose.

> B.    The Majority's Reliance on the Amount of Force is Misplaced

Lastly, I believe that the majority's emphasis on the amount of force used is contrary to established precedent.  The majority assumes, without support or explanation, that a difference in the injuries sustained in the robbery and in the killing demonstrates that the amount of force used in the robbery is distinct from and had an independent purpose from the amount of force used in the killing.  Then, based on this flawed premise, the majority concludes that: "Thus, the robbery of James's ring was an 'injury to the person or property of the victim or others, which [wa]s separate and distinct from' the force used in the murder of James." Majority at 16.  The majority reasons that the force used in the robbery was an injury, and that injury was separate from the force used in the killing.  I respectfully disagree with this construction.  Our inquiry is not into the amount or reasonableness of the force used.  "The test is not whether the defendant used the least amount of force to accomplish the crime." *Freeman*, 153 Wn.2d at 779.  The appropriate inquiry in determining whether the exception to merger applies is whether the "unnecessary force had a purpose or effect independent of the crime." *Freeman*, 153 Wn.2d at 779.  "The grievousness of the harm is not the question." *Freeman*, 153 Wn.2d at 779.

The majority does not explain how the force used is an injury in itself or how a difference in injuries demonstrates a difference in the amount of force used.  Most importantly, the majority fails to explain how the amount of force used is relevant to our inquiry into whether the crimes have an independent purpose or effect for purposes of evaluating whether Knight can properly be punished for both crimes.

In *Freeman*, the defendant held the victim at gunpoint and demanded the victim's valuables. 153 Wn.2d at 769. When the victim did not immediately comply, the defendant shot the victim. *Freeman*, 153 Wn.2d at 769. The court held that assault in the second degree merged with robbery in the first degree, and that the independent purpose exception did not apply. *Freeman*, 153 Wn.2d at 779.

The court reasoned that "[u]sing force to intimidate a victim into yielding property is often incidental to the robbery." *Freeman*, 153 Wn.2d at 779. And while shooting the victim was an unnecessary use of force, that unnecessary force was used to facilitate the robbery. *Freeman*, 153 Wn.2d at 779. "[T]his exception does not apply merely because the defendant used *more* violence than necessary to accomplish the crime." *Freeman*, 153 Wn.2d at 779.

Our inquiry is whether the unnecessary use of force had a purpose independent from facilitating the robbery. *See Freeman*, 153 Wn.2d at 778-79. Knight's accomplices restrained James at gunpoint in order to facilitate the ongoing robbery of the Sanders's home. James broke free and attempted to fight back. In that process, Knight's accomplice shot and killed James. There is no evidence that Knight's accomplice shot James with some other motive than to facilitate the home-invasion robbery.

In *Freeman*, the court asked if "the commission of the 'included' crime [had] an independent purpose or effect from the other crime?" 153 Wn.2d at 778. The majority, however, has turned this question around and instead asks if the killing had an independent purpose or effect from the attempted robbery. As discussed previously, the majority's reliance on an attempted robbery is misplaced. In addition, contrary to law, the majority is looking to see if the "other crime" had an independent purpose from the "included" crime.

For all of the reasons stated above, I respectfully dissent.

_____
Melnick, J.